# Illinois Official Reports

## Appellate Court

---

### *In re Dal. D.*, 2017 IL App (4th) 160893

---

| | |
|---|---|
| Appellate Court Caption | *In re* DAL. D. and DAY. D., Minors (The People of The State of Illinois, Petitioner-Appellee, v. Jennifer Durbin, Respondent-Appellant). |
| District & No. | Fourth District<br>Docket No. 4-16-0893 |
| Filed | April 13, 2017 |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 15-JA-34; the Hon. Kevin P. Fitzgerald, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | William K. Mahrt, of Bloomington, for appellant.<br><br>Jason Chambers, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and Linda S. McClain, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Justices Holder White and Appleton concurred in the judgment and opinion. |

**OPINION**

¶ 1 In May 2016, the State filed a petition to terminate the parental rights of respondent mother, Jennifer Durbin, as to her two sons, Dal. D. (born Oct. 23, 2009) and Day. D. (born June 19, 2008). Following an August 2016 fitness hearing, the trial court found respondent unfit. After an October 2016 best-interest hearing, the court terminated respondent's parental rights.

¶ 2 Respondent appeals, arguing that (1) the factual basis to which she stipulated at her fitness hearing was insufficient to prove she was an unfit parent, (2) the court made no findings of fact to support its determination she was unfit, (3) her admission of unfitness was not knowing and voluntary, and (4) the court's finding that Dal. D.'s and Day. D.'s best interest required termination of her parental rights was against the manifest weight of the evidence. We affirm.

¶ 3                           I. BACKGROUND

¶ 4           A. Proceedings Prior to the State's Petition To
Terminate Parental Rights

¶ 5 In March 2015, the State filed a petition for adjudication of wardship, alleging that Dal. D. and Day. D. were neglected minors pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(b) (West 2014)). Specifically, the petition alleged respondent allowed Thomas Keist, a man she knew to be a registered sex offender, to reside in the home, therefore creating an environment injurious to Dal. D.'s and Day. D.'s welfare. The petition also alleged that respondent admitted Keist stayed in her home overnight multiple times after being told by the Department of Children and Family Services (DCFS) that he was not allowed to stay overnight. The petition noted that Keist was convicted of predatory criminal sexual assault of a 6-year-old boy when he was 29 years old and had not completed sex-offender treatment. The petition reported Dal. D.'s and Day. D.'s father was deceased.

¶ 6 In March 2015, the trial court conducted a shelter-care hearing. Respondent stipulated that probable cause existed to believe that Dal. D. and Day. D. were neglected because she "allowed an untreated convicted child sex offender to live in her home [and] *** reported multiple occasions where the sex offender had unsupervised access to the minors." Respondent also stipulated there was an immediate and urgent necessity to remove the minors because she "was previously admonished of the need to be protective of the minors [and] [s]he was specifically told that the sex offender could not reside with her family. [She] was initially deceptive when police and DCFS appeared at her home." The court entered an order placing Dal. D. and Day. D. in the temporary custody of DCFS.

¶ 7 In April 2015, the trial court conducted an adjudicatory hearing. Respondent admitted the allegations in the State's petition. Respondent stated she understood the allegations and nothing was promised in exchange for her admission. The State provided its factual basis, which focused on a DCFS investigator who received a report that respondent allowed a sex offender access to her children. The investigator told respondent that Keist was not allowed to be alone with the children or to spend the night in the home. An officer from the Bloomington police department had a conversation with respondent wherein she admitted Keist stayed at her house and was staying overnight. Respondent stipulated to the factual basis. The court accepted her admission and entered an order finding Dal. D. and Day. D. neglected.

¶ 8        In May 2015, the trial court conducted a dispositional hearing. The court found respondent was unfit to care for, protect, train, educate, supervise, or discipline Dal. D. and Day. D. because she continued to allow Keist to live with her, and he had not started sex-offender treatment. Respondent continued to downplay the risk Keist posed to the minors. The court based its dispositional findings on the opportunity respondent had to keep her family intact and her decision to put her needs before those of Dal. D. and Day. D. because she refused to separate from Keist. The court further found that it was in the best interest of Dal. D. and Day. D. that they be made wards of the court. The court maintained custody with DCFS and set a permanency goal of returning home in 12 months.

¶ 9        In September 2015, the trial court held a permanency hearing. The State filed a visitor's log from the McLean County jail, demonstrating that respondent visited Keist five times while he was in jail between September 2, 2016, and September 16, 2016. The court entered a permanency order, finding respondent had not made reasonable and substantial progress or efforts toward returning Dal. D. and Day. D. home. The court found respondent remained unfit, stating (1) her ongoing involvement with Keist was highly concerning, and she did not understand the impact the relationship could have on Dal. D. and Day. D.; (2) Keist was evaluated as high risk to reoffend and had not started his treatment; (3) once Keist engaged in his treatment, respondent could begin chaperone classes; (4) her attendance in individual therapy had improved; (5) she was not invested in domestic violence treatment, and instead, she focused on her complaints regarding DCFS and the criminal justice system; (6) she was unemployed; and (7) she had been inconsistent in her medication monitoring.

¶ 10        In February 2016, the trial court held a second permanency hearing. The State filed two incident reports created by the Bloomington police department. The first report, dated January 23, 2016, indicated that respondent was arrested for two traffic warrants and ticketed for driving while her license was suspended and driving without valid insurance. A second, February 17, 2016, report indicated that respondent and her roommate, Jessica Piper, were in a physical altercation. The officer was unable to identify the primary aggressor, and the case was closed. The court entered a permanency order, finding respondent had not made reasonable and substantial progress or efforts toward returning Dal. D. and Day. D. home.

¶ 11        The trial court found respondent remained unfit, stating she (1) was still unable to comprehend the danger a sex offender can be to her children—especially one she trusts; (2) failed to appear for at least two therapy sessions; (3) was ticketed for driving on a suspended license, resulting in her car being impounded; (4) was arrested on two warrants; (5) had police contact for a physical dispute; (6) was homeless; (7) missed six domestic violence sessions and was in danger of needing to restart; and (8) had made all of her visits with Dal. D. and Day. D. The court changed the permanency goal to return home pending status.

¶ 12        In May 2016, the trial court held a third permanency hearing. The State filed an exhibit containing five transcribed telephone conversations between respondent and Keist (while he was in jail) that occurred between September 8, 2015, and November 4, 2015. During a conversation on September 21, 2015, respondent said, "[t]hey are making me not talk to you anymore or see you to get my kids back." Keist asked, "So does that mean we're done?" Respondent replied, "No." The transcripts also demonstrated Keist wanted respondent to deceive the court by maintaining they were only friends.

¶ 13        The trial court found respondent remained unfit and found (1) she was dishonest about her continuing relationship with Keist; (2) she lost her job; (3) she was homeless; (4) she was

unsuccessfully discharged from domestic violence treatment; (5) her therapist opined she does not understand how to keep Dal. D. and Day. D. safe; (6) she was not meeting with her advocate; and (7) the case passed a DCFS legal screen. The permanency goal changed to substitute care pending the termination of respondent's parental rights.

¶ 14                                B. The Petition To Terminate Parental Rights

¶ 15        In May 2016, the State filed a petition to terminate respondent's parental rights as to Dal. D. and Day. D. Specifically, the petition alleged that respondent failed to (1) maintain a reasonable degree of interest, concern, or responsibility as to Dal. D.'s and Day. D.'s welfare (750 ILCS 50/1(D)(b) (West 2014)); (2) make reasonable efforts to correct the conditions that were the basis for the removal of Dal. D. and Day. D. during a nine-month period, August 11, 2015, through May 11, 2016 (750 ILCS 50/1(D)(m)(i) (West 2014)); and (3) make reasonable progress toward the return of Dal. D. and Day. D. during a nine-month period, August 11, 2015, through May 11, 2016 (750 ILCS 50/1(D)(m)(ii) (West 2014)).

¶ 16                                1. *The August 2016 Fitness Hearing*

¶ 17        Respondent admitted the third allegation in the State's petition to terminate her parental rights—namely, that she failed to make reasonable progress toward the return of Dal. D. and Day. D. during a nine-month period (750 ILCS 50/1(D)(m)(ii) (West 2014)). The State provided the following factual basis, In relevant part, as follows:

>        "[Respondent] would stipulate that when the nine[-]month period started she had already been found unfit and there was a return home goal of *** twelve months. If this case were to go to hearing the State would present testimony and evidence of case workers and service providers to support the court's orders that were entered on September 29th finding that [she] had not made reasonable and substantial progress towards returning the minors, another order entered February 23rd indicating that [she] had not made reasonable and substantial progress towards returning the minors and changing the goal at that time to return home pending status and then on the nine month date[, May 2016], an order finding that [she] had not made reasonable substantial progress changing the goal to *** substitute care pending court determination on termination of parental rights.
>
>        I think [she] would also stipulate that on April 27th Ms. Richlewski [*sic*] unsuccessfully discharged her from domestic violence treatment."

Respondent stipulated that the State could prove its factual basis by clear and convincing evidence. The trial court accepted the State's factual basis and found respondent's admission to be voluntary and knowing.

¶ 18                                2. *The October 2016 Best-Interest Hearing*

¶ 19        At the October 2016 best-interest hearing, Melissa Box, a sexual abuse therapist with ABC Counseling and Family Services, testified she instructed a one-day class that was a prerequisite for respondent's chaperone training. Box described respondent's participation as somewhat involved, explaining she made several comments but also "doze[d] off at one point." Box noted respondent's comments concerned whether the information in the class was relevant to her specific situation. Box testified respondent felt she did not need to learn about child sexual

abuse topics because Dal. D. and Day. D. were not at risk. Box expressed concern over respondent's beliefs—specifically, that Keist's incident of child sexual abuse was a one-time incident that would not happen again. Despite these comments, respondent successfully completed Box's class. Box informed respondent that the next step was to attend chaperone training with Keist, which required Keist to be engaged in his own treatment.

¶ 20 Colleen Rychlewski, a therapist, testified that she taught respondent's domestic violence class. Rychlewski described respondent's attendance as poor, stating that in the first few months, she often failed to attend class. Respondent discussed her relationship with Keist, and Rychlewski opined that respondent had difficulty viewing him as a threat because she had known him for several years. Respondent told Rychlewski that she stopped having contact with Keist, but Rychlewski later learned that respondent was being untruthful according to the jail's visiting records. Respondent made minimal progress toward her treatment and was eventually discharged. At the time of this hearing, respondent reengaged Rychlewski and they began individual sessions. Respondent acknowledged she was untruthful during the first round of sessions because she knew how badly it would affect her case.

¶ 21 Dawn Wiles, a foster care caseworker for The Baby Fold, testified she was assigned to Dal. D. and Day. D.'s case. Wiles opined it would be in Dal. D.'s and Day. D.'s best interest if respondent's parental rights were terminated due to her failure to understand how a sex offender, whose victim was the same age and sex as her children, posed a real risk to her children. Wiles said that respondent was often untruthful regarding her unemployment, housing situation, and her relationship with Keist. Wiles explained that Dal. D. and Day. D. were living with their maternal grandmother, Sherry Bridgeforth, who was serving as their foster mother and runs a DCFS-licensed day care out of her home. Bridgeforth expressed a desire to adopt Dal. D. and Day. D. Wiles visited Dal. D. and Day. D. twice a month and did not have concerns about their safety. Wiles acknowledged a report about bruising several months prior but did not believe Bridgeforth committed any abuse.

¶ 22 Wiles expressed concern that Bridgeforth was 64 years old and recommended a backup plan. Bridgeforth eventually plans to move to Florida. Bridgeforth's other daughter plans to move to the same area to help her take care of Dal. D. and Day. D. Wiles stated that Dal. D. and Day. D. would rather live with respondent and that they love her. However, they would be okay with staying with Bridgeforth, too. Wiles stated that Day. D. suffers from renal failure, and she took him to his appointments out of town, as Bridgeforth could not take time off because of her day care business. However, Bridgeforth did attend Day. D.'s appointments that were in town.

¶ 23 Bridgeforth testified that she was respondent's mother and was currently fostering Dal. D. and Day. D. Bridgeforth testified that Dal. D. and Day. D. had been placed in her care since the beginning of the case and the goal was for them to return to respondent, which she supported. She stated that she had two backup caregivers if anything was to happen to her. She addressed the concern over bruises found on one of the children's arms and stated that the children would get bruises from wrestling with each other. She recalled her day care has been reported to a hotline before but the allegations were unfounded. Bridgeforth stated she did not attend Day. D.'s appointments that were out of town because respondent was attending those appointments with Wiles. Bridgeforth believed in the future, it may be in Dal. D.'s and Day. D.'s best interest to allow them to have supervised contact with respondent. Bridgeforth

believed that respondent remained in a relationship with Keist, and if Dal. D. and Day. D. were returned to her care, Keist would have contact with them.

¶ 24 After hearing the evidence, the trial court determined that it was in Dal. D.'s and Day. D.'s best interest to terminate respondent's parental rights. In reaching that determination, the court stated it considered the statutory best-interest factors.

¶ 25 This appeal followed.

¶ 26                                   II. ANALYSIS

¶ 27 On appeal, respondent argues (1) the factual basis to which she stipulated at her fitness hearing was insufficient to prove she was an unfit parent, (2) the trial court made no findings of fact to support its determination she was unfit, (3) her admission of unfitness was not knowing and voluntary, and (4) the court's finding that Dal. D.'s and Day. D.'s best interest required termination of her parental rights was against the manifest weight of the evidence.

¶ 28 The State argues that respondent has forfeited her arguments because she failed to (1) object at her fitness hearing as to the issues of which she now complains or (2) file an appropriate posttrial motion to afford the trial court the opportunity to address her claims. We agree with the State that by failing to preserve the issues respondent now raises, she forfeited review of those issues. See *People v. Rathbone*, 345 Ill. App. 3d 305, 309, 802 N.E.2d 333, 336 (2003). However, the forfeiture rule is a limitation on the parties, rather than this court's jurisdiction. *Maniez v. Citibank, F.S.B.*, 404 Ill. App. 3d 941, 948, 937 N.E.2d 237, 244 (2010). Despite respondent's forfeiture, we choose to address her arguments. See, *e.g.*, *People v. Barnett*, 2011 IL App (3d) 090721, ¶ 28, 952 N.E.2d 669.

¶ 29              A. The State's Factual Basis at Respondent's Fitness Hearing

¶ 30 Respondent argues that the factual basis to which she stipulated at the fitness hearing was insufficient to prove she was an unfit parent under section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2014)). More specifically, she argues, "[t]he State made no reference to the conditions that lead [*sic*] to the removal of the boys, the State did not offer to prove the contents of any service plan, and the State did not bother to relate any of its accusations to [her] ability to parent" (citing *In re J.G.*, 298 Ill. App. 3d 617, 699 N.E.2d 167 (1998)).

¶ 31 When a trial court accepts an admission of unfitness, due process requires that the trial court ensure the State's allegations are based in fact. *In re C.J.*, 2011 IL App (4th) 110476, ¶ 54, 960 N.E.2d 694. In determining whether a factual basis exists, a court need not rely on the State's factual basis provided at the unfitness hearing, but it could *sua sponte* rely on evidence heard during earlier proceedings. *C.J.*, 2011 IL App (4th) 110476, ¶ 56, 960 N.E.2d 694. "When a respondent challenges the sufficiency of the factual basis, the standard of review is whether the trial court abused its discretion by determining that a factual basis existed for the admission." *C.J.*, 2011 IL App (4th) 110476, ¶ 49, 960 N.E.2d 694. An abuse of discretion occurs when the trial court's ruling is fanciful, unreasonable, or when no reasonable person would adopt its view. *In re L.S.*, 2014 IL App (4th) 131119, ¶ 44, 11 N.E.3d 349.

¶ 32 This court has previously analogized the factual basis requirement In respondent's case to the factual basis the State is required to present when a defendant pleads guilty. *C.J.*, 2011 IL App (4th) 110476, ¶¶ 50-54, 960 N.E.2d 694. In the criminal context, " 'All that is required to

appear on the record is a basis from which the judge could reasonably reach the conclusion that the defendant actually committed the acts with the intent (if any) required to constitute the offense to which the defendant is pleading guilty.' " *C.J.*, 2011 IL App (4th) 110476, ¶ 51, 960 N.E.2d 694 (quoting *People v. Barker*, 83 Ill. 2d 319, 327-28, 415 N.E.2d 404, 408 (1980)). This court has further held, "[A]ll the trial court need do to comply with the factual basis requirement *** is to ask the prosecutor to *briefly* describe the evidence the State would be prepared to present if the case went to trial." (Emphasis in original.) *People v. Williams*, 299 Ill. App. 3d 791, 794, 701 N.E.2d 1186, 1188 (1998).

¶ 33     When a defendant pleads guilty, "The plea obviates the prosecution's burden of proof. It supplies both evidence and verdict, ending controversy." (Internal quotation marks omitted.) *People v. White*, 2011 IL 109616, ¶ 17, 953 N.E.2d 398. "Thus, a factual-basis requirement that supports an admission that the child is abused, neglected, or dependent can be no more burdensome for the State than that required in a criminal context, where a defendant's personal liberty may be at risk." *C.J.*, 2011 IL App (4th) 110476, ¶ 54, 960 N.E.2d 694.

¶ 34     In this case, the State provided a sufficient factual basis at the August 2016 fitness hearing to support respondent's admission that (1) Dal. D. and Day. D. were neglected and (2) she had not remedied her unfitness. The State's factual basis demonstrated that respondent failed to make reasonable progress toward the return of Dal. D. and Day. D. during a nine-month period, August 11, 2015, through May 11, 2016, following the adjudication of the neglected minors (750 ILCS 50/1(D)(m)(ii) (West 2014)).

¶ 35     The State's factual basis referred to (1) the trial court's September 2015 permanency order, which the court entered after reviewing the client service plan, the permanency hearing report, and the McLean County jail's visitor's log; (2) the court's February 2016 permanency order, which the court entered after considering the client service plan, the family resource permanency report, and two incident summary reports; (3) the court's May 2016 permanency order, entered after considering the client service plan, the family resource center permanency report, the court-appointed special advocate report, the permanency report, and 30 pages of telephone transcripts between respondent and Keist occurring while he was in jail; (4) respondent's discharge from domestic violence treatment with Rychlewski; and (5) testimony it would present from caseworkers and service providers.

¶ 36     Our review of the record demonstrates the State's factual basis was more than sufficient to find respondent failed to make reasonable progress toward the return of Dal. D. and Day. D. from August 11, 2015, through May 11, 2016 (750 ILCS 50/1(D)(m)(ii) (West 2014)). Under these circumstances, the State could have merely asked the court to recall what it had heard at the permanency hearings the court had conducted about respondent's behavior. The court's doing so would have been sufficient because that recollection would have provided the court with more than sufficient information to ensure that the allegations against respondent were not simply made up.

¶ 37     We further note that a court may *sua sponte* look anywhere in its prior proceedings to determine if a factual basis can be shown. Contrary to respondent's position, the State was not required to offer actual evidence of her unfitness. See *White*, 2011 IL 109616, ¶ 17, 953 N.E.2d 398. Last, respondent's reliance on this court's decision in *J.G.* is misplaced because that case did not involve a respondent's *admission* to the State's factual basis. Accordingly, the trial court did not abuse its discretion when it accepted the State's factual basis at the August 2016

- 7 -

fitness hearing.

B. The Trial Court's Fitness Finding

¶ 39       Respondent argues the trial court made no finding of fact to support its determination that she was unfit and requests this court to remand this cause with directions that the trial court state the factual bases for its findings.

¶ 40       Section 2-21(1) of the Act (705 ILCS 405/2-21(1) (West 2014)) provides that the trial court put the factual basis for its finding that a parent is unfit "in writing." The purpose of this requirement is to "to give the parties notice of the reasons forming the basis for the removal of the child and to preserve this reasoning for appellate review." *In re Madison H.*, 215 Ill. 2d 364, 374, 830 N.E.2d 498, 505 (2005). However, "an oral finding on the record may satisfy section 2-27(1), provided that it is explicit and advises the parties of the basis for the court's decision." *Madison H.*, 215 Ill. 2d at 377, 830 N.E.2d at 506; see also 705 ILCS 405/1-2(4) (West 2014) ("This Act shall be liberally construed to carry out the foregoing purpose and policy."). Further, "due process requires a circuit court to determine whether a factual basis exists for an admission of parental unfitness before it accepts the admission." *In re M.H.*, 196 Ill. 2d 356, 368, 751 N.E.2d 1134, 1142-43 (2001).

¶ 41       In this case, the fitness hearing began with the trial court informing respondent that the purpose of the hearing was to determine whether she was unfit as alleged in the State's petition to terminate her parental rights. The State informed the court that respondent was going to admit paragraph (8)(c) of its petition, which alleged that respondent failed to make reasonable progress toward the return of Dal. D. and Day. D. during a nine-month period (750 ILCS 50/1(D)(m)(ii) (West 2014)). The court then read respondent the allegations contained in paragraph 8(c) of the petition and confirmed that she understood them. The State provided its factual basis for respondent's unfitness, stating it would prove unfitness by calling witnesses to testify and presenting the court's previous permanency orders. The court stated: "The court finds a factual basis, finds a free, voluntary and knowing admission, will find mother unfit as alleged in paragraph 8[(c)] of the petition."

¶ 42       The transcript shows that the trial court clearly adopted the State's factual basis when it made its finding. Based on the circumstances presented in this case, the court's determination comports with section 2-21(1) of the Act (705 ILCS 405/2-21(1) (West 2014)) because it informed respondent of the bases for its decision. More important, respondent admitted paragraph 8(c) of the State's petition, and the court was not required to reiterate the State's factual basis when it determined respondent was unfit.

¶ 43       Respondent cites *In re April C.*, 326 Ill. App. 3d 225, 244, 760 N.E.2d 85, 100-01 (2001), in support of her argument, where the First District wrote the following: "[T]here was more than a bald admission of abuse in the instant case. In fact, an extensive stipulation of facts was read into the record. The court, in finding the children had been abused, then reiterated the factual basis set out in the stipulation as the basis for its finding. The instant case thus conforms to the dictates of *In re M.H.*" Respondent is correct that the trial court in *April C.* repeated the State's factual basis, but that was not necessary. Here, the following support existed for the trial court's finding of unfitness: (1) the State's factual basis, (2) respondent's admission of unfitness, and (3) the court's factual basis to support its finding.

¶ 44                    C. Respondent's Knowing and Voluntary Admission

¶ 45      Respondent argues her admission that she was unfit was not knowing and voluntary. Specifically, when she made the admission, "she did not know that 'failure to make reasonable progress' related in any way to her ability to parent[ ] because the State never alleged the necessary facts."

¶ 46      "Admissions under the Juvenile Court Act must be voluntarily and intelligently made." *April C.*, 326 Ill. App. 3d at 242, 760 N.E.2d at 99. "This *** requirement protects a parent from admitting to neglect or abuse when their conduct does not fall within the State's allegations." *M.H.*, 196 Ill. 2d at 366, 751 N.E.2d at 1142. A factual-basis requirement ensures the State has a basis for its allegation of unfitness and makes certain the respondent's admission of unfitness is knowing and voluntary. *M.H.*, 196 Ill. 2d at 365-66, 751 N.E.2d at 1141. "The factual basis allows the parent to hear the State describe the alleged facts relating to fitness and gives the parent an opportunity to challenge or correct any facts that are disputed." *M.H.*, 196 Ill. 2d at 366, 751 N.E.2d at 1142. Thus, without a sufficient factual basis, an increased risk exists that a respondent's parental rights will be erroneously terminated because of an ill-advised admission of unfitness. *M.H.*, 196 Ill. 2d at 367, 751 N.E.2d at 1142.

¶ 47      Respondent essentially reargues that the State's factual basis at her fitness hearing was insufficient. For the reasons mentioned earlier, we reiterate that the State's factual basis sufficed to support her admission of unfitness. Additionally, the trial court specifically explained the State's allegation and informed respondent that the purpose of the hearing was to determine whether she was unfit as alleged in the State's petition to terminate her parental rights. When the court asked respondent if she understood the allegations, she responded, "Yes." The court also asked respondent whether anything had been promised in exchange for her admission or if she felt forced or threatened in any way. Respondent responded, "No."

¶ 48      Further, as the State points out, "the court admonished respondent at every hearing at every stage that if she did not cooperate with DCFS, comply with the service plan, and correct the conditions requiring the children to be in care, she risked termination of her parental rights." The State also notes that counsel represented respondent at every proceeding, and she does not argue her counsel was ineffective.

¶ 49      Accordingly, our review of the record indicates respondent's admission was both knowing and voluntary.


¶ 50                    D. The Trial Court's Best-Interest Finding

¶ 51      Last, respondent argues that the trial court's finding that terminating her parental rights was in the best interest of Dal. D. and Day. D. was against the manifest weight of the evidence. Respondent contends that the finding was against the manifest weight of the evidence because (1) Dal. D.'s and Day. D.'s physical safety and welfare are in jeopardy at Bridgeforth's home; (2) Dal. D.'s and Day. D.'s identity, background, family, and community are in Illinois, not Florida; (3) everyone agrees Dal. D. and Day. D. are deeply attached to her and want to return home; and (4) she desperately wants to care for Dal. D. and Day. D., who need her.

¶ 52      At the best-interest stage of parental-termination proceedings, the State bears the burden of proving by a preponderance of the evidence that termination of respondent's parental rights is in the child's best interest. *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071, 918 N.E.2d 284, 290-91

(2009). When considering whether termination is in the child's best interest, a trial court must consider, within the context of the child's age and developmental needs, the following factors:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity of affection, and the least[-] disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child." *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1072, 859 N.E.2d 123, 141 (2006).

See also 705 ILCS 405/1-3(4.05) (West 2014).

¶ 53   This court accords trial court decisions in termination proceedings great deference because the trial court is in a better position to see the witnesses and judge their credibility. *In re K.B.*, 314 Ill. App. 3d 739, 748, 732 N.E.2d 1198, 1206 (2000). Thus, a reviewing court will not reverse a trial court's best-interest determination unless it was against the manifest weight of the evidence. *Jay. H.*, 395 Ill. App. 3d at 1071, 918 N.E.2d at 291. A best-interest determination is against the manifest weight of the evidence only if the facts clearly demonstrate that the trial court should have reached the opposite result. *Daphnie E.*, 368 Ill. App. 3d at 1072, 859 N.E.2d at 141.

¶ 54   The evidence presented at the October 2016 best-interest hearing showed that respondent (1) failed to understand the risk that Keist presented to Dal. D. and Day. D., (2) was untruthful about her continuing relationship with Keist, and (3) did not begin chaperone training with Keist. In contrast, Dal. D. and Day. D. had been thriving in a loving, caring environment with Bridgeforth, who had (1) provided for the health, welfare, and emotional needs of Dal. D. and Day. D. and (2) expressed a sincere interest in adopting them. Our review of the record demonstrates that the trial court appropriately considered this evidence and each of the statutory factors under section 1-3(4.05) of the Act (705 ILCS 405/1-3(4.05) (West 2014)), therefore warranting its decision to terminate respondent's parental rights.

¶ 55   We decline defendant's request to reweigh the best-interest factors in her favor. See *In re S.M.*, 314 Ill. App. 3d 682, 687, 732 N.E.2d 140, 144 (2000). In conclusion, the trial court's finding that it was in the best interest of Dal. D. and Day. D. to terminate respondent's parental rights was not against the manifest weight of the evidence.

¶ 56                                    III. CONCLUSION

¶ 57   For the foregoing reasons, we affirm the trial court's judgment.

¶ 58   Affirmed.