**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 200097-U

Order filed October 21, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| *In re* R.V., L.S., E.S., and G.V., | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit, |
| Minors | ) | Mercer County, Illinois. |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-20-0097 |
| | ) | Circuit No. 14-JA-7 |
| v. | ) | |
| | ) | |
| T.V., | ) | |
| | ) | Honorable Richard A. Zimmer, |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court.
Justices McDade and O'Brien concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The evidence supported the trial court's finding that respondent was unfit and that terminating respondent's parental rights was in the best interests of the children. The court's orders were not void after respondent's children were removed from her home.

¶ 2   Respondent., T.V., appeals from an order finding her unfit and terminating her parental rights. She challenges the sufficiency of the evidence. She also claims that her due process rights

were violated after her children were removed from her home without notice or a hearing. We affirm.

¶ 3                                      I. BACKGROUND

¶ 4        On September 18, 2014, the State filed a juvenile neglect petition against respondent. The petition alleged that respondent's four minor children, R.V., L.S., E.S., and G.V., were neglected in that E.S. had cuts, bruises, and welts on his body due to a battery from a belt by respondent's boyfriend, Randall P. The petition further alleged that respondent failed to protect the minors from abuse and failed to follow through with medical treatment for E.S.

¶ 5        On December 9, 2014, the trial court entered an order adjudicating the minors as abused and neglected. On December 29, 2014, the court entered a dispositional order finding that respondent was unwilling to care for, protect, train, educate, supervise, or discipline the minors. The court found that placement of the minors with respondent was contrary to the health, safety, and best interests of the minors. The court made the minors wards of the court and gave custody and guardianship of the children to the Department of Children and Family Services (DCFS) with the right to place.

¶ 6        Between December 29, 2014, and August 11, 2015, the court entered several permanency orders finding that respondent had failed to make reasonable and substantial progress toward returning the minors to her.

¶ 7        On February 9, 2016, the court entered a permanency order finding respondent had made reasonable and substantial progress toward returning the minors to her. On May 10, 2016, the court, again, found that respondent had made reasonable and substantial progress. The court found that E.S. would remain home while R.V. and L.S. had a return home within 12 months goal. The

court restored respondent's custody of E.S. and G.V. and continued custody of R.V. and L.S. to DCFS. Guardianship of the minors remained with DCFS with the right to place.

¶ 8     On August 9, 2016, the permanency review order indicated that custody of R.V., E.S., and G.V. had been returned to respondent. Guardianship with the right to place all four minors remained with DCFS.

¶ 9     On November 7, 2016, the permanency review order again indicated custody of R.V., E.S., and G.V. had been restored to respondent. L.S. remained in DCFS custody. DCFS also continued guardianship with the right to place all four minors.

¶ 10     On January 19, 2017, DCFS filed a "Status Alert Report." The report stated that caseworkers exercised guardianship over R.V., E.S., and G.V. on January 11, 2017. R.V. reported that respondent and Randall were fighting. Randall kicked the door open and off the hinges, broke things in the home, and broke a gun case causing glass to shatter and fall on the floor. Respondent kicked Randall; Randall slapped her. R.V. indicated that G.V. and E.S. were present during the altercation. A caseworker visited R.V. at school. The same day, R.V. told the caseworker that he was being "whipped with the belt" since returning home. Randall told R.V. that it was his "God given right" to whip his children. Respondent denied R.V.'s allegations. DCFS removed the three children from respondent's home and returned them to foster care.

¶ 11     On March 10, 2017, DCFS filed a new permanency report. The permanency report included allegations of substantial risk of physical injury/environment injurious to the health and welfare by neglect. During the reporting period, respondent was rated as unsatisfactory for therapy. The reports alleged that respondent was still in a relationship with Randall but refused to address their relationship issues in therapy. Respondent's therapist reported that respondent and Randall

were unable to make progress as a family until significant relationship issues were resolved as they affected the entire family.

¶ 12     At the March 14, 2017, permanency hearing, respondent failed to appear. However, her attorney appeared on her behalf. Counsel indicated that respondent was aware of the hearing, but he did not know why she failed to appear. The caseworker explained during the hearing that the permanency goals for G.V. and R.V. were to return home. The goal for E.S. was to remain home with his father, Michael S. The services requested were for respondent to participate in anger management and substance abuse assessments. The caseworker explained that the return home goals were as to whichever parent engaged in services and satisfactorily completed them. At the time of the hearing, respondent was not participating in any services. Respondent's counsel agreed with the permanency goals. Counsel also did not raise an objection to DCFS's decision to remove the children from respondent's home on January 11, 2017.

¶ 13     The cause remained pending for several hearings not relevant to this appeal.

¶ 14     Next, on February 13, 2018, respondent's counsel challenged DCFS's ability to remove the children from respondent's home on January 11, 2017. Counsel argued that the court was required to hold a hearing to determine whether a factual basis existed for a change in the minors' custody. Counsel argued that no such hearing occurred. On April 6, 2018, the court ordered the parties to brief the issue of whether the removal of the children on January 11, 2017, rendered the court's subsequent orders void.

¶ 15     After several continuances, the trial court denied respondent's motion. The court noted that respondent failed to appear at the hearing that followed the removal of the children. In addition, respondent's counsel did not object at the hearing. Instead, counsel agreed with the permanency

goals. Respondent filed a notice of appeal, which this court denied. See *In re R.V.*, No. 3-18-0308 (June 13, 2018) (unpublished minute order).

¶ 16 The cause continued through more permanency hearings. At these hearings, the court found that respondent failed to make satisfactory progress toward returning the children home. In addition, during this time respondent was arrested and charged with violating an order of protection, three counts of criminal trespass to property, and two counts of obstruction of justice.

¶ 17 On August 8, 2018, the State filed a petition to terminate respondent's parental rights. The petition alleged that respondent failed to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare.

¶ 18 At the fitness hearing, Shannon Rutherford, the caseworker assigned to respondent's case, testified. She acted as the caseworker in this case from June 2017, to March 2018. She testified that she provided two service plans for respondent. Rutherford did not believe that respondent made reasonable efforts toward satisfactory progress. Respondent failed to complete a domestic violence evaluation. Respondent failed to complete any treatment for domestic violence despite being ordered to complete treatment due to past domestic violence from Randall. Respondent failed to take any of the 40 drug tests she was ordered to complete. After the children were removed in January 2017, respondent was offered weekly visitation. Respondent's attendance at the visits was sporadic; there were months that she did not visit the children. Respondent told Rutherford she did not have transportation to some visits, she was sick, or she would not confirm the visits. Rutherford offered transportation assistance to respondent. Rutherford supervised three visits between respondent and her children. Respondent did not participate in any services while incarcerated.

¶ 19        After hearing the evidence, the trial court found respondent unfit on the basis that she failed to maintain a reasonable degree of interest, concern, or responsibility for the children's welfare.

¶ 20        Prior to the best interests hearing, Olivia DeGeeter, the family worker in this case filed a best interests report. According to the report, L.S. and E.S. lived together in a foster home since August 15, 2018. The foster family signed permanency commitment forms and reported a desire to adopt L.S. and E.S. The foster parent provided the minors' basic needs of food, health, education, and clothing. L.S. was attending a college preparatory school, which the foster parent paid. L.S. was described as "behaviorally specialized;" the foster parent had been able to meet L.S.'s needs without additional services in place. E.S. and G.V. attended school together. E.S. had an individualized education program but was doing well in classes.

¶ 21        G.V. lived in a traditional foster home since January 11, 2017. The foster parents reported their desire to adopt G.V. She referred to her foster parents as "mom and dad" and had become very close with the foster parents' family. The foster family also provided G.V. with her basic needs. The report described G.V. as a typical developing 8-year-old. G.V. participated in cheerleading, gymnastics, softball, and bible study. She attended the same school as E.S.

¶ 22        R.V. lived with his maternal grandfather. The maternal grandfather signed permanency commitment forms. His grandfather also provided for R.V.'s basic needs. The report described R.V. as developing on track for his age.

¶ 23        Every report recommended for the termination of respondent's parental rights.

¶ 24        The guardian *ad litem* (GAL) filed a supplemental report. In the report, the GAL indicated that the physical safety and welfare of the children were met in their foster homes. The GAL indicated that the children had developed a sense of attachment, security, and familiarity through their current foster parents. The GAL believed that staying in the foster homes was the "least

disruptive" situation for the children. The foster parents also indicated a willingness for the children to maintain contact with each other after achieving permanency. The GAL recommended terminating respondent's parental rights.

¶ 25 At the best interests hearing, DeGeeter testified consistently with her best interests report. During her testimony, she indicated that she reviewed permanency reports filed by previous caseworkers before her.

¶ 26 Ultimately, the trial court found that termination of respondent's parental rights furthered the children's best interests. In reaching its conclusion, the trial court relied upon the statutory factors, the testimony as well as the GAL reports.

¶ 27 II. ANALYSIS

¶ 28 On appeal, respondent challenges the trial court's fitness finding as well as its decision to terminate her parental rights. Respondent also argues that the removal of her children from her home without notice and opportunity to be heard violated her due process rights.

¶ 29 A. Sufficiency of the Evidence

¶ 30 First, respondent contends that the State failed to meet its burden in proving her parental unfitness. The State must prove parental unfitness by clear and convincing evidence, and the trial court's findings must be given great deference because of its superior opportunity to observe the witnesses and evaluate their credibility. *In re Jordan V.*, 347 Ill. App. 3d 1057, 1067 (2004). We will not reverse a trial court's finding of parental unfitness unless it was contrary to the manifest weight of the evidence. *In re D.F.*, 201 Ill. 2d 476, 498 (2002). A finding of parental unfitness may be based on evidence sufficient to support any one statutory ground. *In re D.D.*, 196 Ill. 2d 405, 422 (2001).

¶ 31    Here, the trial court found that the State proved respondent failed to maintain a reasonable degree of interest, concern, or responsibility for the children. See 750 ILCS 50/1(D)(b) (West 2014). Section 1(D)(b) of the Adoption Act (Act) provides that a parent may be found unfit for the "[f]ailure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare." *Id.* Any one of the individual elements by itself may be considered as a basis for unfitness, *i.e.*, either interest or concern or responsibility or any combination may provide the basis or bases for a finding of unfitness. *In re B'yata I.*, 2014 IL App (2d) 130558-B, ¶ 31.

¶ 32    Here, the evidence supports the trial court finding respondent to be an unfit parent. At the fitness hearing, the State presented one witness, Rutherford. She acted as a family support and caseworker from June 2017 until March 2018. Respondent initially argues that the entirety of Rutherford's testimony is not based on direct knowledge but, rather, information from other sources. According to respondent, the trial court should not have considered the bulk of Rutherford's testimony as she relied upon service plans and other sources that were not admitted at the fitness hearing. We note, however, that Rutherford testified that she completed two service plans as the caseworker in this case. As such, Rutherford could provide firsthand testimony of her interactions with respondent, as well as respondent's progress or lack thereof with respect to the tasks she was assigned. See *In re Z.J.*, 2020 IL App (2d) 190824, ¶ 64.

¶ 33    Rutherford supervised three visits between respondent and the children during that time. In providing the two service plans, Rutherford concluded that respondent did not make any reasonable efforts toward satisfactory progress as to the plans. Respondent failed to complete a domestic violence evaluation. Respondent failed to complete an ordered substance abuse evaluation. Respondent failed to complete any of the 40 drug tests requested of her. Respondent sporadically visited the children. There were months where she failed to visit the children at all.

Respondent only provided two receipts as proof of income. However, she failed to provide any other verification of income. During the pendency of the proceedings, the State charged respondent with violating an order of protection, three counts of criminal trespass to property, and two counts of obstruction of justice. Respondent remained incarcerated until shortly before the fitness hearing. Respondent did not participate in any services while incarcerated. The evidence supports a finding that respondent made little to no effort to regularly visit and maintain contact with the children. This and her failure to complete her own service plans demonstrated a lack of interest, concern, and responsibility for the children. Consequently, the trial court properly found respondent unfit.

¶ 34  Next, respondent argues the trial court erred when it found that the best interests of the children were furthered by terminating respondent's parental rights. A trial court's finding that termination of parental rights is in a child's best interests will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re Dal. D.*, 2017 IL App (4th) 160893, ¶ 53. The court's decision will be found to be "against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence." *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

¶ 35  At the best interests phase, "the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364 (2004). The State bears the burden of proving by a preponderance of the evidence that termination is in the best interests of a minor. *Id.* at 366; *In re Deandre D.*, 405 Ill. App. 3d 945, 953 (2010). Section 1-3(4.05) of the Juvenile Court Act of 1987 (705 ILCS 405/1-3(4.05) (West 2014)) sets forth various factors for the trial court to consider in assessing a minor's best interests. These considerations include: (1) the minor's physical safety and welfare; (2) the development of the minor's identity; (3) the minor's familial, cultural, and religious background; (4) the minor's

sense of attachment, including love, security, familiarity, and continuity of relationships with parental figures; (5) the minor's wishes and goals; (6) community ties; (7) the minor's need for permanence; (8) the uniqueness of every family and every child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child. *Id.*

¶ 36    Here, the statutory factors favor a finding that it was in the best interests of the children to terminate respondent's parental rights. At the time of termination, the children had been in their foster placements for months. There is no indication that respondent would become fit or be able to fully care for the children. The physical safety and welfare of the children, including food, shelter, clothing, and healthcare were met by the foster families. The minors were happy, content, and well-adjusted with their foster families. While in foster care, the children were attending school and engaged in extracurricular activities. The foster families met the children's background and familial needs by indicating a willingness to maintain contact with the biological siblings. The children had also bonded with their foster parents and indicated their desire to remain with the foster families. Given this record, we cannot say the trial court's finding that it was in the best interests of the children to terminate respondent's parental rights was against the manifest weight of the evidence.

¶ 37    In reaching this conclusion, we reject respondent's challenge to the hearsay nature of the evidence at the termination hearing. Specifically, respondent again notes that DeGeeter testified to acts that occurred prior to her being assigned as the caseworker. Respondent also argues that the trial court should not have considered the GAL reports because they were not admitted into evidence. The formal rules of evidence do not apply at the best interests phase of termination proceedings. *In re Jay H.*, 395 Ill. App. 3d 1063, 1070 (2009); see also *In re Z.J.*, 2020 IL App (2d) 190824, ¶ 76. At the best interests phase, the trial court may rely on "[a]ll evidence helpful

[(in the trial court's judgment)] in determining these questions" to the extent of its probative value. 705 ILCS 405/2-22(1) (West 2014). It was proper for the trial court to consider this evidence because such evidence was probative of the best interest factors. *Jay H.*, 395 Ill. App. 3d at 1070. We find no error in considering this evidence.

¶ 38                                    B. Due Process

¶ 39        Next, respondent contends her due process rights were violated when DCFS removed the children from her custody on January 11, 2017, without notice or a hearing. According to respondent, the removal of her children without notice and a hearing rendered every subsequent order entered by the trial court void. Even assuming respondent's due process rights were violated, we find that the ultimate judgment is not void.

¶ 40        There are only two circumstances in which a judgment will be considered void: (1) when it is entered by a court that lacked personal or subject-matter jurisdiction or (2) when it is based on a statute that is facially unconstitutional and void *ab initio*. *People v. Price*, 2016 IL 118613, ¶ 17; *People v. Castleberry*, 2015 IL 116916, ¶¶ 11-12; *People v. Thompson*, 2015 IL 118151, ¶¶ 31-33. Neither circumstance applies here. Respondent does not contend that the trial court lacked jurisdiction or that the court acted on a facially unconstitutional statute. Consequently, the orders entered after the children's removal from respondent's home are not void even if a due process violation occurred.

¶ 41        In reaching this conclusion, we reject respondent's reliance on *In re J.S.*, 272 Ill. App. 3d 219 (1995). *J.S.* is both factually and legally distinguishable from this case. In *J.S.*, the parent's children were adjudicated wards of the court and DCFS as guardians. *Id.* at 221. Although custody of the children initially remained with the parents, the trial court later entered an order removing custody of the children from their parents. *Id.* The parents were not present in court at the time of

- 11 -

the hearing. *Id.* On the day of the removal, the parents appeared in court on an emergency basis. *Id.* The parents testified that they were not informed that they were supposed to be in court on the day of removal. *Id.* The parents then filed motions to vacate the order removing the children, arguing that the State failed to file a motion requesting a change of custody. *Id.* The parents also argued that they were never given notice and an opportunity to be heard regarding the change of custody. *Id.* at 221-22. The trial court allowed the parents to present evidence that they would have presented at a change of custody hearing. *Id.* After a hearing, the court decided to let the removal order stand. *Id.*

¶ 42        The parents immediately appealed. On appeal, the parents argued that the children were removed in violation of their due process rights. *Id.* at 222. The court agreed, finding the parents were not provided with notice and an opportunity to be heard prior to the removal of the children from their custody. *Id.* at 223. The appellate court found that the trial court should have granted the parents' motion to vacate the order removing the children from their custody. *Id.*

¶ 43        Unlike the parents in *J.S.*, respondent failed to immediately challenge the removal of her children. In fact, at the first hearing following the removal of her children, respondent's counsel appeared in court and *agreed* with the new permanency plan, which recommended the children remain outside respondent's custody with the goal to work toward returning the children to respondent's home. In fact, respondent waited over a year to challenge the removal of her children. Finally, we note that the court in *J.S.* did not find the trial court's orders to be void. Rather, the court reversed the trial court's order as it was a direct appeal from the order removing the children. As we have already found, the orders in this case are not void.

¶ 44                                   III. CONCLUSION

¶ 45        For the foregoing reasons, we affirm the judgment of the circuit court of Mercer County.

¶ 46    Affirmed.