NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (4th) 220977-U

NO. 4-22-0977

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 27, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Z.S., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
| Petitioner-Appellee, | ) | No. 21JA14 |
| v. | ) | |
| Kelsey R., | ) | The Honorable |
| Respondent-Appellant). | ) | David A. Brown, |
| | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Zenoff and Lannerd concurred in the judgment.

**ORDER**

¶ 1     *Held:*   The appellate court vacated respondent's admission of parental unfitness, reversed the trial court's order terminating respondent's parental rights, and remanded for a new fitness hearing because the trial court accepted respondent's admission of unfitness without first determining whether a factual basis existed therefor, in violation of respondent's right to due process.

¶ 2     Respondent, Kelsey R., is the mother of Z.S. (born January 2021). In October 2022, the trial court found (1) respondent was an unfit parent and (2) it was in Z.S.'s best interest to terminate respondent's parental rights. Respondent appeals, arguing the trial court erred by accepting her admission of parental unfitness without first determining whether a factual basis existed therefor, in violation of respondent's constitutional right to due process.

¶ 3     The State concedes that the trial court erred by failing to elicit a factual basis before accepting respondent's admission of parental unfitness.

¶ 4     We agree and (1) vacate respondent's admission of unfitness, (2) reverse the trial

court's order terminating respondent's parental rights, and (3) remand the cause for a new fitness hearing.

¶ 5                                    I. BACKGROUND

¶ 6                                   A. Procedural History

¶ 7            In January 2021, the State filed a petition for adjudication of wardship, alleging Z.S. was a neglected minor in that his environment was injurious to his welfare when he lived with respondent because respondent had been found unfit in Tazewell County case Nos. 19-JA-323 and 20-JA-1 and "ha[d] not completed services that would restore her to minimal parenting." The same day the petition was filed, the trial court conducted a shelter care hearing and placed temporary custody and guardianship of Z.S. with the guardianship administrator of the Department of Children and Family Services (DCFS).

¶ 8            In February 2021, the trial court appointed counsel to represent respondent. Later that month, respondent filed a written "Answer to Petition Filed Under Juvenile Court Act," in which she stipulated that the allegations could be proven by a preponderance of the evidence and waived her right to "demand strict proof or a trial thereon."

¶ 9            In July 2021, the trial court entered a written adjudicatory order, finding Z.S. was a neglected minor as alleged in the petition. That same day, the trial court entered a written dispositional order, finding that it was in the best interest of Z.S. and the public that Z.S. be made a ward of the court and adjudicated a neglected minor. The court further found respondent unfit for reasons other than financial circumstances alone to care for, protect, train, and discipline the minor and that it would be contrary to the Z.S.'s health, safety, and best interest to be in her custody. The court placed guardianship and custody with the guardianship administrator of DCFS. (We note that the record on appeal contains no report of proceedings from the

adjudicatory or dispositional hearings.)

¶ 10                    B. The Petition for Termination of Parental Rights

¶ 11          In June 2022, the State filed a petition for termination of respondent's parental

rights. The State alleged respondent was an unfit parent because she failed to make reasonable

progress toward the return of the minor to her care within the nine-month period following the

adjudication of neglect (September 8, 2021, through June 8, 2022). See 750 ILCS 50/1(D)(m)(ii)

(West 2020).

¶ 12                    1. *Respondent's Admission of Unfitness*

¶ 13          In August 2022, the trial court conducted a hearing regarding "attorney

appearance and answer [to the petition]." Respondent appeared with counsel and filed a written

"Answer to Juvenile Petition," which was a form document. Respondent had checked the line

indicating that she stipulated to the allegation of unfitness in the petition for termination of

parental rights and waived her right to "demand strict proof thereof." The following colloquy

occurred:

> "THE COURT: The case is set for an answer by the mother. Mother's
>
> filed an answer, and it appears she's stipulating, is that correct, [counsel]?
>
> [RESPONDENT'S COUNSEL]: It is, [Y]our Honor.
>
> THE COURT: Mom, the State's filed a petition back on June 15th
>
> alleging that you failed to make reasonable progress toward the return of the
>
> minor to your care during a nine-month period of time. If that is established, we
>
> could proceed to a best interest hearing where I determine whether it's in the best
>
> interest of the minor that your parental rights be terminated. If you stipulate to
>
> that count, there would be no trial on it and we'd just proceed to a best interest

hearing. Do you understand that? Does that make sense?

(No verbal response.)

THE COURT: Nods her head yes.

All right. Is that how you want to answer the petition?

[RESPONDENT]: Yes.

THE COURT: All right. The Court will accept the answer, find that it's knowingly and intelligently made."

¶ 14       2. *The Fitness Portion of the Termination Proceedings*

¶ 15       In October 2022, the trial court conducted a hearing on the fitness portion of the termination proceedings. (We note that Z.S.'s father, Thomas S.—who is not a party to this appeal—had not stipulated to unfitness.) After the court called the case for hearing, the following exchange occurred:

"THE COURT: How does the State wish to proceed?

[THE STATE]: I would just ask based on mom's stipulation if she's requesting any evidence? If not, I will be proceeding just on dad.

THE COURT: [Counsel]?

[RESPONDENT'S COUNSEL]: We do not request any evidence at this time, Judge.

THE COURT: Waiving a factual basis on stipulation?

[RESPONDENT'S COUNSEL]: We would, Judge.

THE COURT: All right. Does the [guardian *ad litem* (GAL)] have any objection to that?

[GAL]: No, Your Honor.

- 4 -

THE COURT: Well, we will proceed with regard to the father then."

The court then heard evidence regarding the allegations of unfitness against Thomas. The court received no evidence regarding respondent's parental fitness.

¶ 16     At the conclusion of the evidence and arguments, the trial court made factual findings regarding Thomas's failure to make reasonable progress. Regarding respondent, the court remarked only as follows:

> "With that, I'll find the father unfit as to Count I and mother stipulated, waived a factual basis and the, I think even—well, and so the Court will find that the State has met its burden of proof on Count I as to mom also failing to make reasonable progress during the nine-month period of time."

The court made no factual findings regarding respondent's failure to make reasonable progress.

### 3. *The Best-Interest Portion of the Termination Proceedings*

¶ 17     Immediately following the fitness finding, the trial court conducted the best-interest portion of the termination proceedings, at the conclusion of which the court found that it was in Z.S.'s best interest that respondent's parental rights be terminated.

¶ 18     That same day, the trial court entered a handwritten order, stating that the allegations of the petition were proven and it was in Z.S.'s best interest that parental rights be terminated. The order did not contain any factual findings.

¶ 19     The following day, the trial court entered a typewritten order, titled "Dispositional Order Terminating Parental Rights," which again stated that (1) the allegations in the petition were proven by clear and convincing evidence and (2) the court found by a preponderance of the evidence that it was in Z.S.'s best interest to terminate the parental rights of respondent and Thomas. This order likewise contained no factual findings supporting the court's finding that

respondent was unfit.

¶ 20     This appeal followed.

¶ 21                    II. ANALYSIS

¶ 22     Respondent appeals, arguing the trial court erred by accepting her admission of unfitness without first determining whether a factual basis existed therefor, in violation of respondent's constitutional right to due process. The State concedes that the court erred by failing to elicit a factual basis.

¶ 23                    A. The Applicable Law

¶ 24     A parent has a fundamental liberty interest in the care, custody, and control of her child. *In re M.H.*, 196 Ill. 2d 356, 362-63, 751 N.E.2d 1134, 1139-1140 (2001) (citing *Pierce Society of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 534-35 (1925), and *Lulay v. Lulay*, 193 Ill. 2d 455, 470-71, 739 N.E.2d 521, 530 (2000)). Because the State's goal upon the filing of a termination petition is " 'not merely to infringe that fundamental liberty interest, but to end it,' " the procedures used in termination proceedings must satisfy the requirements of the due process clause of the United States Constitution. *Id.* at 363 (quoting *Santosky v. Kramer*, 455 U.S. 745, 759 (1982)).

¶ 25     An admission of parental unfitness must be knowingly and voluntarily made. *Id.* at 366. The recitation of a factual basis (1) "allows the parent to hear the State describe the alleged facts relating to fitness" and (2) "gives the parent an opportunity to challenge or correct any facts that are disputed." *Id.* "[I]f a parent is not fully informed of the factual basis underlying the State's allegations, the risk is increased that her parental rights will be erroneously terminated because of an ill-advised admission of unfitness." *Id.* at 367. Accordingly, "due process requires a circuit court to determine whether a factual basis exists for an admission of parental unfitness

- 6 -

before it accepts the admission." *Id.* at 368; see also *In re Dal. D.*, 2017 IL App (4th) 160893, ¶ 31, 74 N.E.3d 1185 ("When a trial court accepts an admission of unfitness, due process requires that the trial court ensure the State's allegations are based in fact.").

¶ 26        Whether a trial court is required to elicit a factual basis prior to accepting an admission of parental unfitness is reviewed *de novo*. *M.H.*, 196 Ill. 2d at 361. A challenge to the sufficiency of a factual basis is reviewed for an abuse of discretion. *Dal. D.*, 2017 IL App (4th) 160893, ¶ 31. "An abuse of discretion occurs when the trial court's ruling is fanciful, unreasonable, or when no reasonable person would adopt its view." *Id.*

¶ 27                          B. This Case

¶ 28        The parties agree that (1) pursuant to the Illinois Supreme Court's clear direction in *M.H.*, the trial court was required to determine whether a factual basis existed before accepting respondent's admission of unfitness and (2) the court failed to do so. We also agree.

¶ 29        In August 2022, respondent admitted that the State could prove the allegation that she was an unfit parent because she had failed to make reasonable progress toward the return of Z.S. within the nine-month period following adjudication. Without confirming that the State could, in fact, prove the allegation by eliciting a factual basis therefor, the trial court accepted respondent's admission and found that it was knowingly and voluntarily made. However, under the reasoning of *M.H.*, respondent's admission could not have been knowing and voluntary because she was denied the opportunity to (1) hear the State's recitation of facts relating to unfitness and (2) challenge or correct any disputed facts.

¶ 30        We also note that the trial court could have *sua sponte* found that a factual basis existed based upon evidence it had heard during earlier proceedings. *Dal. D.*, 2017 IL App (4th) 160893, ¶ 31 ("In determining whether a factual basis exists, a court need not rely on the State's

factual basis provided at the unfitness hearing, but it could *sua sponte* rely on evidence heard during earlier proceedings."). However, here, the court neither (1) made any reference to a factual basis, nor (2) made any factual findings, oral or written, that would support a finding of unfitness.

¶ 31    In *In re P.W.*, 2022 IL App (4th) 220373-U, this court was presented with a similar situation in which the trial court accepted a respondent's stipulation of parental unfitness without determining whether a factual basis existed. There, we determined that the respondent's due process rights were not violated because "the trial court had an abundance of evidence in the record to support its accepting respondent's stipulation." *Id.* ¶ 39. Specifically, (1) the same judge had presided over the entirety of the case from shelter care to termination, as well as termination proceedings relating to P.W.'s siblings and (2) the trial court had created "an exceptionally thorough record at the permanency hearings through live testimony of the caseworker." *Id.*

¶ 32    In the present case, this court ordered the parties to address in their briefs the applicability of *P.W.* to the facts of this case. Both respondent and the State agree that *P.W.* is distinguishable, and we agree with their reasoning.

¶ 33    First, unlike in *P.W.*, the judge in the present case who accepted respondent's admission of unfitness had not presided over the entire case. Instead, a different judge had presided over the adjudicatory and dispositional phases of the case.

¶ 34    Next, although the judge who accepted respondent's admission presided over two permanency hearings and entered permanency orders finding that respondent had failed to make reasonable efforts or progress, the record on appeal contains no transcripts of those hearings. As a result, unlike in *P.W.*, this court is unable to look to an "exceptionally thorough record" to

determine precisely what information the trial court had before it from prior proceedings. *Id.*

¶ 35    Moreover, there is no indication in the record that the trial court presided over any termination proceedings relating to any siblings of Z.S.

¶ 36    For these reasons, we cannot say, as we did in *P.W.*, that the trial court had such an abundance of knowledge as to satisfy the factual basis requirement such that respondent's due process rights were well protected.

¶ 37    However, we can say that the following admonition from *P.W.* applies equally to this case:

> "[T]he circumstances of this record on which respondent bases her appeal should never have occurred. The issue on appeal could have—and should have—been avoided if at the fitness portion of the termination proceedings, the trial court either (1) asked the State for a factual basis to support the allegations or (2) explained that it was *sua sponte* finding an adequate factual basis based on the information and testimony it had received during earlier proceedings. Using either option would have taken no more than a few seconds. And if a trial court does not ask for a factual basis for a respondent's stipulation at the fitness portion of a termination proceeding, the State should volunteer one anyway. *The need to show a factual basis for the stipulation should not be overlooked.*" (Emphasis added.) *Id.* ¶ 43 (citing *M.H.* 196 Ill. 2d at 365-68).

¶ 38    Finally, we note that both respondent and the State request as a remedy that this court remand the case for the recitation of a factual basis. However, in *M.H.*, the Illinois Supreme Court did not merely remand the cause for the recitation of a factual basis, but instead vacated the respondent's admission of unfitness, reversed the trial court's order terminating

parental rights, and remanded the case for a new fitness hearing. *M.H.*, 196 Ill. 2d at 368. We follow the precedent of the supreme court, as we are bound to do.

¶ 39                                III. CONCLUSION

¶ 40          For the reasons stated, we conclude that the trial court's failure to determine that respondent's admission of parental unfitness was supported by a factual basis before accepting the stipulation violated respondent's right to due process. Accordingly, we (1) vacate respondent's admission of unfitness, (2) reverse the court's order terminating respondent's parental rights, and (3) remand the cause for a new fitness hearing.

¶ 41          Vacated, reversed, and remanded.