NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 200339-U

NO. 4-20-0339

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 12, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.P., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Macon County |
| Petitioner-Appellee, | ) | No. 19JA24 |
| v. | ) | |
| Heather P., | ) | Honorable |
| Respondent-Appellant). | ) | Thomas E. Little, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Harris and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, concluding that the trial court's finding of unfitness and termination of respondent's parental rights were not against the manifest weight of the evidence.

¶ 2    In February 2019, the State filed a petition for adjudication of neglect with respect to five-day-old A.P., the minor child of respondent, Heather P., based on substance abuse exposure. At the shelter-care hearing, respondent stipulated to the State's evidence and temporary custody and guardianship was placed with the Illinois Department of Children and Family Services (DCFS). At the adjudication in May 2019, both parents stipulated to one count of neglect based on ongoing substance abuse. At the dispositional hearing in June 2019, both parents were found unfit, and the minor was made a ward of the court with custody and guardianship to remain with DCFS. The State filed a motion seeking a finding of unfitness and

termination of parental rights in January 2020. The father did not participate in the fitness hearing or best-interests hearing and is not relevant to this appeal.

¶ 3        After a July 2020 fitness hearing, the trial court found respondent unfit, concluding respondent failed to show a reasonable degree of interest, concern, or responsibility for A.P. (750 ILCS 50/1(D)(b) (West 2018)). The court then proceeded to a best-interests hearing, where it found it was in A.P.'s best interests that respondent's parental rights be terminated.

¶ 4        On appeal, respondent argues the trial court's unfitness finding and its decision to terminate her parental rights are against the manifest weight of the evidence. We disagree and affirm.

¶ 5                                    I. BACKGROUND

¶ 6        In February 2019, the State filed a petition for adjudication of neglect, alleging A.P., born January 31, 2019, was neglected because respondent placed the minor in an injurious environment by exposing her to substance abuse. 705 ILCS 405/2-3(1)(b) (West 2018). Respondent and the newborn tested positive for cocaine at the time of A.P.'s birth, and respondent had tested positive "every time she came to the hospital throughout the pregnancy."

¶ 7        At the adjudicatory hearing in May 2019, respondent stipulated to a finding of neglect as alleged in count I of the petition, which stated specifically that the minor's environment was injurious to her welfare in that respondent "tested positive for cocaine at the time the child was born," that both parents "admit to ongoing substance abuse issues," and that they have another child in care "who was removed from home for substance abuse issues." The court also found that "[t]he parents have not made sufficient progress in [the other] case to have unsupervised visits."

¶ 8            At the dispositional hearing in June 2019, the trial court found both parents unfit and that it was in the best interests of the minor to be made a ward of the court with custody and guardianship placed with DCFS. The court also found the service plan and proposed services for the parents to be appropriate.

¶ 9            The State filed a motion seeking a finding of unfitness and termination of the parental rights of both parents and any unknowns in January 2020. With respect to respondent, the petition alleged she failed to maintain a reasonable degree of interest, concern, or responsibility for the minor's welfare, pursuant to section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West 2018)). Both parents were present in court with counsel, admonished on the allegations of the State's motion, and given notice of a fitness hearing in March 2020, which was delayed several times due to the COVID-19 pandemic.

¶ 10            In July 2020, the trial court held a fitness hearing. The record reflects respondent received notice of the hearing via publication. She had had no contact with her caseworker for an extended period of time. Respondent failed to appear at the hearing that proceeded her absence. Respondent does not claim lack of notice in her appeal. Shamika Foster, the supervisor for foster care at Webster-Cantrell Youth Advocacy (Webster-Cantrell), testified she supervised A.P.'s case. She was familiar with respondent from a previous juvenile case concerning respondent's older daughter, where respondent had failed to complete similar services. In A.P.'s case, respondent was recommended to have psychotherapy, obtain a substance abuse assessment and treatment, obtain a psychiatric assessment, take psychiatric medication, and attend parenting classes. Foster testified respondent completed a substance abuse assessment and one treatment program but returned to using drugs afterwards. She started several other treatment programs but completed none—"she continued to do drugs after she got out [of treatment]." Respondent's last

drug test in May 2019 was positive for cocaine. Respondent failed to attend several other drug screens, which were counted as positive results. Otherwise, she failed to complete any other services. Her visits were very sporadic, and she never achieved unsupervised visits away from Webster-Cantrell because of her continued drug use. Foster said the visits were stopped from time to time because respondent was required to conduct a pre-visit drug test since she was not attending substance abuse treatment. Respondent claimed the tests were "doctored" and became upset. Eventually, visits would recommence. However, by the time of the hearing in July 2020, the last visit had been in December 2019. Foster testified the last time she had contact with respondent was approximately one month prior to the hearing, when she called after respondent missed her previous court date. Foster testified that was the only contact Webster-Cantrell had with respondent "in a long time." Although respondent was upset about what she said was late notice, Foster said respondent's failure to provide a current address or correct phone number made it difficult for DCFS to contact her. Foster testified she informed respondent of the court date at which she was testifying.

¶ 11    Brandy Graham, an adoption specialist at Webster-Cantrell, testified she had been the caseworker since May 2020 and had no contact with respondent during that time. Graham compiled a fitness report containing respondent's positive drug drops, which was introduced and considered by the trial court. The report also detailed how respondent's oldest daughter (age 11) came into foster care. The daughter reported respondent and her husband were "getting high all the time" from synthetic marijuana and that they drank alcohol "constantly." She said she found a "one hitter pipe" in the home and gave it to her grandmother to throw away. The oldest daughter reported the house was infested with cockroaches. She also said she was often hungry since respondent and her husband were "always asleep." She said she would call family

members to obtain food. Graham's fitness report noted respondent's extended history of alcohol, synthetic marijuana, and cocaine use. The report noted respondent's husband's son (an indicated sex offender) is often around the home. A.P. came into DCFS care after respondent tested positive for cocaine during her pregnancy with A.P. Respondent was "positive for cocaine and has been positive every time she has come to the hospital throughout the pregnancy." Graham's report indicated respondent was recommended for "parenting classes, to complete a substance abuse and mental health assessment, outpatient treatment counseling, and to obtain and maintain stable housing and finances." With regard to parenting, there was no evidence respondent had even obtained an assessment, let alone attended parenting classes. Although respondent obtained three different substance abuse assessments, she continued to test positive for drugs throughout the pendency of the case. She provided no proof of attending outpatient treatment and was discharged unsuccessfully after one month of inpatient treatment. She failed to participate in several drug screens, and she continued to test positive for both synthetic marijuana and cocaine when she did consent to a test. To her credit, the report noted respondent attended a mental health assessment and was not recommended for treatment. During approximately four months between October 2019 and January 2020, she missed 12 visits with A.P., often cancelling on the day of the visit. The report noted respondent had been told on a number of occasions she could not obtain the return of A.P. unless she complied with services.

¶ 12        The trial court found the State's witnesses credible and found the State had "proven [respondent unfit] by clear and convincing evidence." The court then proceeded to a best-interests hearing. The State recalled Brandy Graham to talk about A.P.'s current placement. She stated A.P.'s only placement had been with her aunt and her older sister. Graham stated A.P. and her sister are "very bonded and attached." A.P.'s older sister had been in this placement for

over a year and A.P. had been there since she was four days old. Graham testified the aunt was willing to provide permanency for the minors. Graham recommended adoption, believing it to be in A.P.'s best interests. She recommended respondent's parental rights be terminated. The trial court noted A.P.'s current residence is a stable, adoptive placement where she has bonded and become attached to her aunt and her sister. The placement provides for all of her needs and is the only placement she has known. The court found the State had proved by a preponderance of the evidence that terminating respondent's parental rights served A.P.'s best interests.

¶ 13    This appeal followed.

¶ 14                    II. ANALYSIS

¶ 15    Respondent argues the trial court's unfitness finding and its decision to terminate her parental rights are against the manifest weight of the evidence. We disagree and affirm.

¶ 16    The Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2018)) and the Adoption Act (750 ILCS 50/1 *et seq.* (West 2018)) govern how the State may terminate parental rights. *In re D.F.*, 201 Ill. 2d 476, 494, 777 N.E.2d 930, 940 (2002). Together, the statutes outline two necessary steps the State must take before terminating a person's parental rights—the State must first show the parent is an unfit person, and then the State must show terminating parental rights serves the best interests of the child. *D.F.*, 201 Ill. 2d at 494-95 (citing 750 ILCS 50/1(D) (West 1998); 705 ILCS 405/2-29(2) (West 1998)). Here, respondent challenges the trial court's determinations at each of these steps. We take her challenges in turn.

¶ 17                    A. Fitness Hearing

¶ 18    " 'The State must prove parental unfitness by clear and convincing evidence ***.' " *In re A.L.*, 409 Ill. App. 3d 492, 500, 949 N.E.2d 1123, 1129 (2011) (quoting *In re Jordan V.*, 347 Ill. App. 3d 1057, 1067, 808 N.E.2d 596, 604 (2004)). The State elected to

- 6 -

proceed under section 1(D)(b) of the Adoption Act—"[f]ailure to maintain a reasonable degree of interest, concern or responsibility as to the minor's welfare." 750 ILCS 50/1(D)(b) (West 2018). "The language specified in this ground is disjunctive. [Citation.] Therefore, any of its three elements—the failure to maintain a reasonable degree of interest *or* concern *or* responsibility as to the child's welfare—may be considered on its own as a basis in determining whether the parent is unfit." (Emphases in original.) *In re Nicholas C.*, 2017 IL App (1st) 162101, ¶ 24, 77 N.E.3d 1173. "A finding of unfitness under ground (b) is based on a subjective analysis." *Nicholas C.*, 2017 IL App (1st) 162101, ¶ 24. Under this subsection, a trial court does not focus on the parent's success, but instead on the reasonableness of her efforts, taking into account her own circumstances. *In re Jaron Z.*, 348 Ill. App. 3d 239, 259, 810 N.E.2d 108, 125 (2004). "However, simply because a parent demonstrates some interest or affection toward her child does not render her fit under this ground; rather, her interest, concern, and/or responsibility must be reasonable." *Nicholas C.*, 2017 IL App (1st) 162101, ¶ 24. Further, under ground (b), there are no time constraints that limit a court's consideration of a parent's fitness. *In re Je. A.*, 2019 IL App (1st) 190467, ¶ 50, 144 N.E.3d 582.

¶ 19       In determining whether a parent has shown a reasonable degree of interest, concern, or responsibility for a child's welfare, courts have held that the completion of service plan objectives, like substance abuse treatment, can also be considered evidence by the trial court to gauge a parent's concern, interest, and responsibility. See *Jaron Z.*, 348 Ill. App. 3d at 259 ("Noncompliance with an imposed service plan, a continued addiction to drugs, a repeated failure to obtain treatment for an addiction, and infrequent or irregular visitation with the child have all been held to be sufficient evidence warranting a finding of unfitness under [ground] (b)."); *In re T.Y.*, 334 Ill. App. 3d 894, 906, 778 N.E.2d 1212, 1220 (2002) (upholding the trial

- 7 -

court's finding the father was unfit due to his failure to complete services, including his failure to control his alcoholism and anger); *In re M.J.*, 314 Ill. App. 3d 649, 657, 732 N.E.2d 790, 796 (2000) ("[F]ailure to comply with the directives of a service plan with the stated goal of returning a child home is tantamount to objectively unreasonable interest, concern, or responsibility as to the child's welfare.").

¶ 20    The evidence revealed respondent tested positive for cocaine at the time A.P. was born and had multiple positive drug tests during her pregnancy. Her substance abuse issues had prevented her from obtaining the return of her oldest daughter in a previous case. The fitness report provided the trial court a glimpse of the home conditions prior to A.P.'s birth. A.P.'s 11-year-old sister described the constant drug and alcohol use within the home by respondent and her husband prior to A.P.'s birth. She would find drug paraphernalia in the home and was forced to call family when she was hungry because respondent and her husband "sleep all day and night." The report noted respondent and her husband "have an extended history of alcohol, [synthetic marijuana,] and crack cocaine use and recently had an open investigation with DCFS." When respondent was given the opportunity to obtain substance abuse treatment, she failed to provide proof of completing any substance abuse treatment without returning to drugs. She missed a number of drug screens and repeatedly tested positive for synthetic marijuana and cocaine. According to the caseworker familiar with both this case and the case involving respondent's older child, respondent had never successfully addressed her substance abuse issues. Her most recent caseworker noted respondent failed to do so even when she knew her substance abuse would prevent the return of her children. Eventually, her visits became sporadic and then nonexistent for the last seven months of the case.

¶ 21        Based on this evidence, it was rational for the trial court to conclude respondent failed to demonstrate a reasonable degree of interest, concern, or responsibility for A.P.'s welfare before finding her unfit. This court gives " 'great deference' " to a trial court's fitness finding " 'because of [that court's] superior opportunity to observe the witnesses and evaluate their credibility.' " *A.L.*, 409 Ill. App. 3d at 500 (quoting *Jordan V.*, 347 Ill. App. 3d at 1067). We will not reverse a trial court's fitness finding unless it was contrary to the manifest weight of the evidence. *A.L.*, 409 Ill. App. 3d at 500. The trial court's decision will be found to be "against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence." *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16, 73 N.E.3d 616. The record before us reveals the trial court made an objectively reasonable decision based on the evidence presented and it was not against the manifest weight of the evidence to do so. The record is clear—respondent had no intention of addressing her alcohol and substance abuse issues and was going to do nothing to change the nature of her parenting.

¶ 22                          B. Best-Interests Hearing

¶ 23        Once a trial court finds a parent an "unfit person," it must next consider whether terminating that person's parental rights serves the child's best interests. "[A]t a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364, 818 N.E.2d 1214, 1227 (2004); see also *In re Julian K.*, 2012 IL App (1st) 112841, ¶ 80, 966 N.E.2d 1107 (stating once the trial court finds the parent unfit, "all considerations, including the parent's rights, yield to the best interests of the child"). When considering whether termination of parental rights serves a

child's best interests, the trial court must consider several factors within "the context of the child's age and developmental needs." 705 ILCS 405/1-3(4.05) (West 2018).

¶ 24 A trial court's finding that termination of parental rights is in a child's best interests, just as in the fitness hearing, will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re Dal. D.*, 2017 IL App (4th) 160893, ¶ 53, 74 N.E.3d 1185.

¶ 25 At the best-interests hearing, the trial court heard evidence of A.P.'s placement with her aunt, who plans to adopt her. A.P.'s older sister, with whom she has bonded, also lives in the home. It is the only placement A.P. has known. It is where all her basic needs have been provided. The court commented on how the report indicated A.P. was a "happy, bubbly, chunky cheeked one-year-old who's loved on and spoiled daily by the entire household," and how that one sentence actually said a great deal about the child's stability in her current environment. A.P. was in a home surrounded by people who loved her and cared for her. The possibility of returning the child to the environment described by her older sister, to a parent who had so clearly indicated a lack of concern for her welfare, would have been the only thing worse than the neglect heaped upon her by respondent in the first place. Therefore, we cannot find that the trial court's finding at the best-interests hearing was "unreasonable, arbitrary, or not based on the evidence." *Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

¶ 26 III. CONCLUSION

¶ 27 For the reasons stated, we affirm the trial court's judgment.

¶ 28 Affirmed.