NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 210053-U

NOS. 4-21-0053, 4-21-0054 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 3, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* R.C. and B.C., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Woodford County |
|     Petitioner-Appellee, | ) | Nos.  18JA19 |
|     v. | ) |       19JA1 |
| Harry C., | ) | |
|     Respondent-Appellant). | ) | Honorable |
| | ) | Charles M. Feeney III, |
| | | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Knecht and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, holding the trial court did not err in terminating
respondent's parental rights.

¶ 2    In March 2018, the State filed a "Petition for Adjudication of Wardship" with

respect to R.C. In March 2019, the State filed a "Petition for Adjudication of Wardship and

Shelter Care," alleging B.C. was neglected. Respondent, Harry C., is the father of both minor

children. In June 2018, the trial court adjudicated R.C. neglected, made him a ward of the court,

and placed custody and guardianship with the Illinois Department of Children and Family

Services (DCFS). The trial court entered the same finding for B.C. in March 2019. The State

filed a petition to terminate Harry C.'s parental rights as to both minors in May 2020. Following

Harry C.'s stipulation to unfitness in August 2020, the court found him an "unfit person" within

the meaning of section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018)). The court

then held a best-interests hearing in January 2021, where the court found it was in the minors'

best interests to terminate Harry C.'s parental rights.

¶ 3         In February 2021, this court granted Harry C.'s motion to consolidate the two

cases for appeal. On appeal, he argues the trial court erred in terminating his parental rights.

Specifically, Harry C. argues that the trial court's best-interests determination was against the

manifest weight of the evidence. We affirm.

¶ 4                              I. BACKGROUND

¶ 5         In March 2018, the State filed a petition for adjudication of neglect with respect to

R.C. (born March 21, 2016). One year later, a petition was filed, alleging B.C. (born February

26, 2019) was neglected. The State alleged these minors were neglected based on an injurious

environment under several sections of the Juvenile Court Act of 1987 (Juvenile Court Act) (705

ILCS 405/2-3(1)(b) (West 2018)). First, as to R.C., the injurious environment was due to his

mother's unresolved substance abuse issues, unresolved domestic violence issues of both his

mother and father, and his mother's previously unresolved juvenile case in another county. As to

B.C., the injurious environment was due to the previous finding of unfitness of both parents and

a failure to regain fitness. After each respective shelter care hearing, the trial court issued an

order finding probable cause and placed temporary custody and guardianship of both minors

with DCFS.

¶ 6         R.C.'s mother, Tiffany, was later found fit and is not a party to this appeal. One of

the allegations of neglect as to R.C. was based on an injurious environment caused by Harry C.'s

unresolved domestic violence issues. In June 2018, at the adjudicatory hearing in R.C.'s case,

both Tiffany and Harry C. stipulated to a finding of an injurious environment, and R.C. was

adjudicated neglected with temporary custody and guardianship to remain with DCFS. At the

dispositional hearing in July 2018, both parents were found unfit, and R.C. was made a ward of the court, with custody and guardianship placed with DCFS.

¶ 7        In March 2019, at the adjudicatory hearing for B.C., essentially the same thing occurred in that both parents again admitted the allegation of the petition and the trial court found, this time based on a previous finding of unfitness in R.C.'s case, that B.C. was also neglected, and it continued temporary custody and guardianship with DCFS. The April 2019 dispositional hearing for B.C. mirrored that of R.C. as well with a finding of parental unfitness, with wardship of B.C. and custody and guardianship granted to DCFS. The cases were then combined for hearing after the next permanency review and heard simultaneously thereafter.

¶ 8        The December 2019 permanency review report documented Harry C.'s abuse of prescription medications and detailed another domestic violence incident between Harry C. and Tiffany. The trial court found, 17 months into the proceedings, Harry C. had made "no progress." The court then changed the permanency goal for him from "return home in 12 months" to "substitute care pending determination of parental rights," and he was to have no contact with the children until he could demonstrate he "truly care[s] about the children by getting services done and doing what is necessary to be a proper and caring and loving parent."

¶ 9        In May 2020, the State filed a petition to terminate Harry C.'s parental rights, alleging Harry C. was an unfit person pursuant to section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018)). The State's petition alleged he was unfit based on his failure to make reasonable efforts to correct the conditions causing removal (750 ILCS 50/1(D)(m)(i) (West 2018)) or reasonable and substantial progress toward return of the children (750 ILCS 50/1(D)(m)(ii) (West 2018)) during the nine-month periods between October 1, 2018, to July 1, 2019, and June 15, 2019, to March 15, 2020, as to R.C. and between March 12, 2019, to

December 12, 2019, and June 6, 2019, to March 6, 2020, as to B.C. The State asked that termination of Harry C.'s parental rights be found in the minors' best interests and for custody and guardianship to remain with DCFS with the authority to consent to adoption.

¶ 10        At the hearing on the termination petition in August 2020, Harry C. stipulated to unfitness by failing to make reasonable progress toward the return of the children during the relevant nine-month time periods (for R.C., June 15, 2019, to March 15, 2020; for B.C., June 6, 2019, to March 6, 2020). The matter was then set for a separate best-interests hearing in January 2021.

¶ 11        At the hearing, the parties stipulated to Harry C.'s Class 4 felony conviction of aggravated assault of a peace officer (720 ILCS 5/12-2(b)(4.1)(d) (West 2018)), for which he was currently serving a two-year sentence in the Illinois Department of Corrections (DOC). He had an expected parole date of September 2021 followed by a mandatory supervised release period of one year. The trial court, without objection, took judicial notice of the following: Harry C.'s previous convictions for criminal damage to property, a Class 4 felony (720 ILCS 5/21-1 (West 2018)), his pending petition to revoke probation in that matter, and Harry C.'s previous misdemeanor conviction for two counts of harboring a runaway (720 ILCS 5/10-6 (West 2018)) where the victims were his other two children.

¶ 12        The State then called its lone witness, Tiffany, the children's mother and Harry C.'s ex-wife. Tiffany, who divorced Harry C. in November 2020, indicated that both children had been living with her since June or July 2020. She was involved in their day-to-day activities, including transporting them to doctor's appointments, school, and immunization appointments, and ensuring their needs were met. She described the close bond B.C. and R.C. had with one another, which often involved the younger B.C. seeking out her older brother for companionship.

Tiffany said her mother, who had been the children's substitute DCFS caregiver since April 2020, resided 40 minutes away and was someone she could consistently rely on to help take care of them. Tiffany testified she had substantial local family support with many siblings living on the same block who have children with whom R.C. and B.C. can play. Tiffany also said she had two older daughters (ages 13 and 7) living with her who have been "wonderful" to R.C. and B.C. She also described some of the issues between her and Harry C. These included: fighting, arguing, and a domestic battery incident, which the best-interests report indicated resulted in Tiffany receiving a black eye and prompted DCFS involvement. She acknowledged several of these incidents occurred in front of either the children or Harry C.'s other children. Tiffany also described Harry C.'s lack of involvement with the children, noting how he had no involvement with R.C. since September 2019 and had not established a genuine relationship with B.C. at all.

¶ 13 Neither Harry C. nor the guardian *ad litem* presented evidence at this hearing.

¶ 14 The trial court, after listening to the arguments of the parties and considering the statutory best-interests factors, concluded the State proved by clear and convincing evidence it was in R.C.'s and B.C.'s best interests that Harry C.'s parental rights be terminated.

¶ 15 This appeal followed.

¶ 16 II. ANALYSIS

¶ 17 Harry C. does not claim error regarding the finding of unfitness. Instead, he argues the trial court erroneously terminated his parental rights because the court's best-interests determination stands against the manifest weight of the evidence. We disagree and affirm the trial court's judgment.

¶ 18 The Juvenile Court Act (705 ILCS 405/1 *et seq.* (West 2018)) and the Adoption Act (750 ILCS 50/1 *et seq.* (West 2018)) govern how the State may terminate parental rights.

*In re D.F.*, 201 Ill. 2d 476, 494, 777 N.E.2d 930, 940 (2002). Together, the statutes outline two necessary steps the State must take before terminating a person's parental rights—the State must first show the parent is an "unfit person," and then the State must show terminating parental rights serves the best interests of the child. *D.F.*, 201 Ill. 2d at 494-95 (citing the Adoption Act (750 ILCS 50/1(D) (West 1998) and the Juvenile Court Act (705 ILCS 405/2-29(2) (West 1998)). Here, Harry C. challenges only this second-step—the best-interests determination.

¶ 19    "[A]t a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364, 818 N.E.2d 1214, 1227 (2004); see also *In re Julian K.*, 2012 IL App (1st) 112841, ¶ 80, 966 N.E.2d 1107 (stating, once the trial court finds the parent unfit, "all considerations, including the parent's rights, yield to the best interests of the child"). When considering whether termination of parental rights serves a child's best interests, the trial court must consider several factors within "the context of the child's age and developmental needs." 705 ILCS 405/1-3(4.05) (West 2018). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of
> the child's identity; (3) the child's familial, cultural[,] and religious
> background and ties; (4) the child's sense of attachments, including
> love, security, familiarity, continuity of affection, and the least
> disruptive placement alternative; (5) the child's wishes and
> long-term goals; (6) the child's community ties; (7) the child's
> need for permanence, including the need for stability and
> continuity of relationships with parent figures and siblings; (8) the
> uniqueness of every family and child; (9) the risks related to

- 6 -

substitute care; and (10) the preferences of the person available to care for the child." *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1072, 859 N.E.2d 123, 141 (2006).

See also 705 ILCS 405/1-3(4.05)(a) to (j) (West 2018).

¶ 20        A trial court's finding that termination of parental rights is in a child's best interests will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re Dal. D.*, 2017 IL App (4th) 160893, ¶ 53, 74 N.E.3d 1185. The court's decision will be found to be "against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence." *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16, 73 N.E.3d 616.

¶ 21        Harry C. contends, although he stipulated to unfitness, the trial court's determination terminating his parental rights goes against the manifest weight of the evidence because he "was on track to complete counseling" and a no-contact order between him and the minors "prevented him from showing any progress with the minor children." However, as the State correctly points out, whether Harry C. "was on track" to complete certain services is the wrong standard to use at the best-interests determination stage. At this stage, the court does not focus on Harry C.'s efforts to correct the conditions that brought the children into care. Rather, the focus shifts to the consideration of the minors' best interests and the 10 factors listed within the context of the minors' age and developmental needs. *Daphnie E.*, 368 Ill. App. 3d at 1072; 705 ILCS 405/1-3(4.05)(a) to (j) (West 2018)).

¶ 22        Harry C. next complains the trial court's no-contact order between him and the minors "removed any opportunity for Harry [C.] to show that he could improve his children's future financial, social and emotional atmosphere. His hands were tied by the trial court's

ruling." Again, he incorrectly focuses on his progress or lack thereof, as opposed to the best interests of the children. Harry C. fails to cite any relevant legal authority to support how this specific proposition bolsters his claim the trial court's best-interests determination was against the manifest weight of the evidence. Without authority, this argument is forfeited. Under Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), each argument is to be supported by citation to relevant authority. "Both argument and citation to relevant authority are required." *Vancura v. Katris*, 238 Ill. 2d 352, 370, 939 N.E.2d 328, 340 (2010); see also *Enbridge Pipeline (Illinois), LLC v. Hoke*, 2019 IL App (4th) 150544-B, ¶ 43, 123 N.E.3d 1271 (stating noncompliance with Rule 341(h)(7) results in forfeiture). However, where the appellate court finds the flaws were not "so serious as to interfere with [the appellate court's] ability to understand and adjudicate [the] case," the court may address the issue presented. *State Farm Mutual Automobile Insurance Co. v. Burke*, 2016 IL App (2d) 150462, ¶ 22, 51 N.E.3d 1082. Notwithstanding Harry C.'s noncompliance, from the record we are still able to analyze whether the trial court's decision to terminate Harry C.'s parental rights was against the manifest weight of the evidence.

¶ 23        Harry C.'s claim that the no-contact order prohibited him from "showing any progress" has a number of flaws. First, as we noted above, he has focused on the wrong standard, which has no relation to "best interests." See *Julian K.*, 2012 IL App (1st) 112841, ¶ 80 ("*all* considerations" must yield to the best interests of the minor (emphasis added)). Second, the no-contact order was entered in December 2019, and according to the evidence presented at the best-interests hearing, Harry C. stopped visiting or having contact with the minors in September 2019, two months before the trial court entered the no-contact order. He was sentenced to prison in September 2020, and prior to that he was housed in the Woodford County jail during part of the proceedings. The best-interests report sums up Harry C.'s involvement with his children

thusly: "[R.C.] has not participated in consistent visitation with his father, Harry [C.] *** Prior to the no contact order, [Harry C.'s] visitations with [R.C.] were sporadic." "[B.C.] has not participated in consistent visitations with her father, [Harry C.] ***[B.C.] has not developed a significant bond with [Harry C.]." Thus, the evidence suggests Harry C.'s lack of consistent interest in his children was well established before the implementation of a no-contact order.

¶ 24        At the best-interests hearing, the trial court had access to the best-interests hearing report, the permanency report, and testimony from the children's mother, Tiffany, who had been found to be meeting all of the children's needs and provided them with love, nurturing, and support. Tiffany assisted them with school and doctor's appointments, and she had several family members living on the same block willing to assist if needed. Both children have a strong bond with their mother, especially the older R.C., who "seek[s] her for comfort when upset." At the time of the best-interests hearing, the children, although placed with their grandmother, spent the majority of their time with their mother. In addition to adequately addressing R.C.'s needs, the report found Tiffany provided R.C. with a "sense of familiarity" and there is a "strong attachment" between them. B.C. also has a secure attachment to Tiffany, who has demonstrated she is capable of providing for all her needs. Similar to R.C., B.C. has participated in overnight and unsupervised visitation at Tiffany's home and has a strong connection to her grandmother and extended family members who live nearby in the community.

¶ 25        According to the permanency report, Harry C. has not contacted the caseworker since October 2020, and his last contact with anyone else with the social service agency was in March 2020. The best-interests report recommended Harry C.'s parental rights be terminated and R.C. and B.C. be returned to Tiffany. The permanency report recommended wardship be terminated and to make Tiffany the legal guardian of R.C. and B.C.

¶ 26　　　　At the conclusion of the best-interests hearing, the trial court properly identified each of the statutory factors in the context of the minors' ages and developmental needs, starting with their safety and welfare. It noted how Harry C. is incapable of providing for them for the foreseeable future, as he will be incarcerated at least until September 2021. Further, the court expressed deep concern for Harry C.'s previous conviction for harboring a runaway involving his two other children, which the court viewed as a significant risk to the safety and welfare of R.C. and B.C. The development of the child's identity also favored termination. By the time of the hearing, four-year-old R.C. had not had contact with Harry C. for approximately one year, leaving the trial court to reason that [R.C.] had no "significant relationship with [Harry C.] for a significant period of time *** when you look at a percentage of [R.C.'s] life that he has not been around [Harry C.]." Tiffany testified Harry C. had never been a part of B.C.'s life and, in fact, did not even know who he was.

¶ 27　　　　The minors' sense of attachment and where they feel a sense of security and continuity was found by the trial court to clearly rest with the mother in her home, as she had been providing a stable home and providing for their needs while Harry C. had been incarcerated. Both minors have significant ties to the community. Tiffany's relatives live on the same block and have provided support and stability to her and the children when needed. In addition, R.C. and B.C. have several cousins living in the area. While B.C. is too young for school, R.C. "loves school" and says he has friends there and good interactions with the other children. The court found the need for permanence with parent figures, siblings, and other relatives was a significant factor in this case. The trial court found that after the past year with their maternal grandmother, and then Tiffany and her family, Harry C.'s resurgence into their lives upon release from DOC "would be a significant disruption" to their lives. The past history

- 10 -

of domestic violence and his conviction for harboring runaways who were his own children by another relationship were evidence of that. After considering all these factors, the court found it was in the best interests of the minors to terminate Harry C.'s parental rights.

¶ 28       Based on the evidence and the court's proper consideration of all statutory factors, we do not find this best-interests determination to be against the manifest weight of the evidence. *Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

¶ 29                                III. CONCLUSION

¶ 30       For the reasons stated, we affirm the trial court's judgment.

¶ 31       Affirmed.