NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 210401-U

NO. 4-21-0401

IN THE APPELLATE COURT

FILED
October 28, 2021
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* A.P., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Champaign County |
| Petitioner-Appellee, | ) | No. 19JA40 |
| v. | ) | |
| Tianna M., | ) | Honorable |
| Respondent-Appellant). | ) | Matthew D. Lee, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Cavanagh and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the trial court's termination of respondent's parental rights was not against the manifest weight of the evidence.

¶ 2        In July 2019, the State filed a petition for adjudication of neglect with respect to A.P., the minor child of respondent, Tianna M., alleging A.P. was neglected and living in an environment injurious to her welfare. In October 2019, the trial court adjudicated the minor neglected, made her a ward of the court, and placed custody and guardianship with the Illinois Department of Children and Family Services (DCFS). The State filed a petition to terminate respondent's parental rights in April 2021. Following hearings on the State's petition in June and July 2021, the court found respondent an "unfit person[ ]" within the meaning of section 1(D) of

the Adoption Act (750 ILCS 50/1(D) (West 2018)); the court then found it was in A.P.'s best interest to terminate respondent's parental rights.

¶ 3 Respondent appeals, arguing the trial court erred in terminating her parental rights. We affirm.

¶ 4        I. BACKGROUND

¶ 5 On July 9, 2019, the State filed a petition for adjudication of neglect with respect to A.P. (born May 16, 2019), the minor child of respondent and Lamar P. The petition alleged the minor was neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Act) (705 ILCS 405/2-3(1)(b) (West 2018)) because she lived in an environment injurious to her welfare when in the care of respondent. Specifically, the petition alleged "the environment expose[d] the minor to domestic violence."

¶ 6 A.P. came to DCFS's attention on May 17, 2019, after DCFS received a "hotline call" regarding respondent's inability to care for the minor. During a cervical examination one day prior, respondent "became very upset and asked if she could 'make out' with [Lamar P.] during the exam." At some point, "[h]ospital security had to be contacted due to [respondent] being aggressive with [Lamar P.] They were arguing and [Lamar P.] was trying to leave, [respondent] was pulling on him and his phone broke." Over the course of the subsequent investigation, the child-protection investigator "learned there was a domestic on 4/24/19," and "there was another police contact on 6/24/19." On June 29, 2019, "the day following the closing of the investigation[,] another domestic occurred." On July 8, 2019, DCFS took protective custody of A.P.

¶ 7    The trial court found probable cause to believe the minor was neglected after respondent and Lamar P. stipulated to temporary custody. The court entered an order granting temporary custody to DCFS.

¶ 8    In September 2019, the trial court found the minor was neglected based on an injurious environment. The dispositional report indicated respondent was 24 years old. Respondent had six pending charges for assault, invasion of privacy, and obstructing the peace. She was arrested for domestic battery in March 2019. The report further indicated respondent "was observed to struggle with managing her emotions and behavior while at [Lutheran Social Services of Illinois (LSSI)]," and she appeared to be "highly agitated."

¶ 9    In its October 2019 dispositional order, the trial court found respondent unable, for reasons other than financial circumstances alone, to care for, protect, train, or discipline A.P., and the health, safety, and best interest of the minor would be jeopardized if she remained in the custody of respondent. The court adjudged the minor neglected, made her a ward of the court, and placed custody and guardianship with DCFS.

¶ 10    A February 2021 permanency report indicated respondent had not been in contact with her caseworker and thus it was unknown where she was living or whether she was homeless. The report further indicated respondent failed to engage in any services, remained unemployed, and was last arrested "on February 23, 2020[,] for DUI." Respondent had only one visit with A.P. since November 2020. During that visit, the caseworker intervened after respondent and Lamar P. "began arguing with each other regarding why [A.P.] would not pay attention to them." In March 2021, the trial court entered a permanency order finding respondent had not made reasonable progress or reasonable efforts toward returning A.P. to the home.

¶ 11         In April 2021, the State filed a motion to terminate the parental rights of respondent and Lamar P. The State alleged respondent was unfit because she (1) failed to make reasonable progress toward the return of the minor to her during any nine-month period following the adjudication of neglect (July 8, 2020, to April 8, 2021) (750 ILCS 50/1(D)(m)(ii) (West 2018)) and (2) failed to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare (750 ILCS 50/1(D)(b) (West 2018)).

¶ 12         In June 2021, the trial court conducted a hearing on the State's motion. Bobbi Kennedy, an LSSI caseworker, testified she was assigned respondent's case until July 2020. Throughout the entirety of her assignment, Kennedy stated "it was very difficult to get both [respondent] and [Lamar P.] to cooperate, to engage in services, [or] to even engage in visits." LSSI recommended respondent undergo services for anger management, individual counseling, and domestic violence, but she did not participate. LSSI also referred respondent for group counseling, "but she was a disruption to the group." Respondent was inconsistent in her visitation with A.P. and missed over half of their scheduled visits. Respondent also failed to comply with her drug screens and tested positive for cannabis. During cross-examination, Kennedy testified respondent failed to complete her parenting classes due to her continued combativeness. Respondent was "never given unsupervised visits" with A.P.

¶ 13         Ashley Danner, an LSSI caseworker, testified she was assigned respondent's case in September 2020. Danner testified respondent was again referred for parenting and domestic violence classes, anger management services, and individual counseling but she did not participate. Respondent failed to maintain consistent contact with Danner. Danner sent respondent letters but did not receive any responses. As of March 2021, respondent had not reached out to schedule any visits with A.P.

¶ 14        Following the parties' arguments, the trial court found respondent unfit because of her failure to make reasonable progress and for failing to maintain a reasonable degree of interest, concern, or responsibility. The court noted respondent's failure to engage in "numerous services: including, parenting, psychological evaluations, substance abuse assessment, counseling, domestic violence counseling, and anger management." The court also found it "troubling that even with respect to the visitations there were instances *** of domestic violence and [an] inability to ameliorate the deficiencies that caused the case to come into the court."

¶ 15        A July 2021 best-interest report indicated A.P. was two years old and had been placed in a relative foster home. Her needs for "physical safety and welfare, including food, shelter, health, and clothing ha[d] been met exceedingly by the foster parent." A.P. was "well integrated into the foster family," and she was "bonding to her sister and becoming very attached to her." The report indicated respondent had not completed any recommended services and had not maintained contact with LSSI regarding her living arrangements. Respondent remained infrequent in her visitation with A.P. Although respondent initially visited A.P. during her parenting classes, "many of these sessions would end in [respondent] and [Lamar P.] getting into verbal arguments and the session would end." Similarly, video visits during the ongoing COVID-19 pandemic "would usually end early due to their arguments in front of [A.P.]" The report contended termination of respondent's parental rights served A.P.'s best interest and asked for custody and guardianship to remain with DCFS, giving it the authority to consent to A.P.'s adoption.

¶ 16        In July 2021, the trial court conducted the best-interest hearing. Danner again testified respondent had yet to engage in any of her recommended services, but Danner "spoke

with [respondent] at length on June 29th of 2021." Danner further testified respondent's most recent visit with A.P. "went very well."

¶ 17　　　　In looking at A.P.'s best interest, the trial court considered the minor's need for permanency and that she was "doing quite well in her current placement and has been cared for and is loved and is very happy and healthy." The court also considered the foster parent's desire to adopt the minor and noted respondent's failure to complete "any of the services that the agency has repeatedly recommended and attempted to help [her] engage in." The court ultimately found it in A.P.'s best interest that respondent's parental rights be terminated.

¶ 18　　　　This appeal followed.

¶ 19　　　　　　　　　　　　　　II. ANALYSIS

¶ 20　　　　On appeal, respondent argues the trial court erred in terminating her parental rights. Specifically, she alleges the trial court's best-interest determination stands against the manifest weight of the evidence.

¶ 21　　　　The Juvenile Act (705 ILCS 405/1-1 *et seq.* (West 2018)) and the Adoption Act (750 ILCS 50/1 *et seq.* (West 2018)) govern how the State may terminate parental rights. *In re D.F.*, 201 Ill. 2d 476, 494, 777 N.E.2d 930, 940 (2002). Together, the statutes outline two necessary steps the State must take before terminating a person's parental rights—the State must first show the parent is an "unfit person," and then the State must show terminating parental rights serves the best interest of the child. *D.F.*, 201 Ill. 2d at 494-95 (citing 750 ILCS 50/1(D) (West 1998); 705 ILCS 405/2-29(2) (West 1998)). Here, respondent does not challenge the trial court's unfitness finding. Rather, she challenges the trial court's determination at the second step only—the best-interest step—maintaining the trial court erred. We disagree.

¶ 22          Once a trial court finds a parent an "unfit person," it must next consider whether

terminating that person's parental rights serves the child's best interest. "[A]t a best-interests

hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's

interest in a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364, 818 N.E.2d 1214, 1227

(2004); see also *In re Julian K.*, 2012 IL App (1st) 112841, ¶ 80, 966 N.E.2d 1107 (stating, once

the trial court finds the parent unfit, "all considerations, including the parent's rights, yield to the

best interests of the child"). When considering whether termination is in a child's best interest,

the trial court must consider several factors within "the context of the child's age and

developmental needs." 705 ILCS 405/1-3(4.05) (West 2018). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of
> the child's identity; (3) the child's familial, cultural[,] and religious
> background and ties; (4) the child's sense of attachments, including
> love, security, familiarity, continuity of affection, and the least
> disruptive placement alternative; (5) the child's wishes and long-
> term goals; (6) the child's community ties; (7) the child's need for
> permanence, including the need for stability and continuity of
> relationships with parent figures and siblings; (8) the uniqueness of
> every family and child; (9) the risks related to substitute care; and
> (10) the preferences of the person available to care for the child."
> *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1072, 859 N.E.2d 123,
> 141 (2006).

See also 705 ILCS 405/1-3(4.05) (West 2018).

¶ 23    A trial court's finding that termination of parental rights is in a child's best interest will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re Dal. D.*, 2017 IL App (4th) 160893, ¶ 53, 74 N.E.3d 1185. The court's decision will be found to be "against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence." *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16, 73 N.E.3d 616.

¶ 24    Respondent contends the trial court's best-interest determination goes against the manifest weight of the evidence because "[f]or some reason or reasons—freeing herself from the influence of [Lamar P.], the recent birth, medication stabilization, family support—[she] shows definite signs of change for the better." She further submits "that this is an unusual case that justifies a cautious delay in finding A.P.'s best interest served by terminating her *** parental rights." "With a continuation of services, agency supervision, and another review in three- or six-months," respondent reasons, "the court would have a more certain basis on which to assess A.P.'s best interest, and the delay would not adversely affect any of the other statutory best-interest factors." However, the argument itself ignores the importance of permanency in the child's life. Having failed to actively engage or complete any recommended service in two years, respondent contends that just a little more time would prove beneficial. Further, contrary to her assertion "that this is an unusual case," it is not. It is unfortunately all too common. Respondent remains, albeit much too late, focused on her circumstances.

¶ 25    At a best-interest hearing, the focus shifts from the parent to the child, and the question becomes whether parental rights should be terminated in light of the child's needs. *D.T.*, 212 Ill. 2d at 364. The record reveals respondent's arguments to be unfounded and the State presented ample evidence showing termination of respondent's parental rights served A.P.'s best

interest. At the termination hearing, the trial court noted respondent failed to complete "any of the services that the agency has repeatedly recommended and attempted to help [her] engage in." Respondent infrequently visited A.P. and missed over half of their scheduled visits. Although respondent's most recent visit with A.P. "went very well," sessions routinely ended early due to respondent and Lamar P. "getting into verbal arguments" in the minor's presence. Nothing about respondent's behavior, such as her persistent drug use and failure to cooperate with DCFS throughout the entirety of the case, indicated she was any closer to reunification.

¶ 26        A child's interest in a loving, stable, and safe home environment might be best served by freeing him or her for adoption. *In re F.P.*, 2014 IL App (4th) 140360, ¶ 92, 19 N.E.3d 227. Of particular concern to the trial court was the issue of A.P.'s need for permanence. The court noted the foster parent's desire to adopt the minor and that she was already fulfilling the minor's emotional needs for affection and comfort in a safe environment. A.P. was "doing quite well in her current placement and has been cared for and is loved and is very happy and healthy." The minor had been in care since July 2019—in essence her entire life—and respondent had yet to complete any services or comply with the requirements of her service plan as of July 2021. Further, the best-interest report showed A.P. was thriving in her relative foster home and outlined A.P.'s progress since leaving respondent's care. The report indicated the minor's needs for "physical safety and welfare, including food, shelter, health, and clothing ha[d] been met exceedingly by the foster parent." A.P. was "well integrated into the foster family," and she was "bonding to her sister and becoming very attached to her."

¶ 27        All told, the evidence in this record supports the trial court's decision that terminating respondent's rights served A.P.'s best interest, meaning the decision is neither unreasonable nor arbitrary. See *Keyon R.*, 2017 IL App (2d) 160657, ¶ 16. Since the evidence

does not lead us clearly to the opposite conclusion, we cannot say the trial court's best-interest determination goes against the manifest weight of the evidence. *Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

¶ 28                                III. CONCLUSION

¶ 29        For the reasons stated, we affirm the trial court's judgment.

¶ 30        Affirmed.