NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 241329-U

NOS. 4-24-1329, 4-24-1330 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 30, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* C.S. and B.L., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Winnebago County |
| Petitioner-Appellee, | ) | Nos. 20JA350 |
| v. | ) | 23JA84 |
| Jamie F., | ) | |
| Respondent-Appellant). | ) | Honorable |
| | ) | Erin B. Buhl, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Knecht and Cavanagh concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court granted appellate counsel's motion to withdraw and affirmed, concluding no issue of arguable merit could be raised on appeal.

¶ 2   In June 2024, the State filed a petition to terminate the parental rights of respondent, Jamie F., to her minor children, B.L. (born December 2013) and C.S. (born January 2023). Following the fitness and best interest hearings, the trial court granted the State's petition and terminated respondent's parental rights. The court also terminated the parental rights of B.L.'s putative father, Brandon E., and C.S.'s father, Jeremy S., who are not parties to this appeal.

¶ 3   Respondent timely appealed, and this court appointed counsel to represent her. Counsel has filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), contending "there are no viable non-frivolous issues to present in this appeal." We grant the motion to withdraw and affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5         On September 10, 2020, the State filed a petition for adjudication of wardship, alleging B.L. was a neglected minor pursuant to the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3 (West 2020)). The petition alleged (1) respondent's paramour had a substance abuse problem which prevented him from properly parenting (count I), (2) respondent had a substance abuse problem which prevented her from properly parenting (count II), (3) B.L. was located playing a block away from the home while respondent was asleep and unaware B.L. left the home (count III), and (4) respondent's home was unsanitary (count IV). At the shelter care hearing, the trial court appointed counsel for respondent and admonished her on the State's petition. After consulting with counsel, respondent waived her right to a shelter care hearing. The court accepted respondent's waiver, found there was probable cause for the petition, and granted temporary custody and guardianship of B.L. to the Illinois Department of Children and Family Services (DCFS).

¶ 6         The adjudicatory hearing, originally scheduled for December 2020, was continued multiple times by agreement. On April 23, 2021, respondent waived her right to an adjudicatory hearing and stipulated to count III of the State's petition. The State then dismissed counts I, II, and IV. The trial court accepted respondent's stipulation and found B.L. was a neglected minor, as alleged in count III of the petition.

¶ 7         At the dispositional hearing on June 18, 2021, respondent stipulated she was "unfit or unable but not unwilling to care for, protect, train or otherwise discipline [B.L.]" The trial court accepted respondent's stipulation and ordered custody and guardianship of B.L. would remain with DCFS.

¶ 8         While respondent's case with B.L. was still pending, respondent gave birth to C.S.

in January 2023. On March 15, 2023, the State filed a petition for adjudication of wardship, alleging C.S. was a neglected minor pursuant to section 2-3 of the Juvenile Court Act (705 ILCS 405/2-3 (West 2022)). The petition alleged (1) C.S. was born with amphetamines in his "urine, blood, or meconium" (count I), (2) respondent had a substance abuse issue which prevented her from properly parenting (count II), and (3) respondent "failed to cure the conditions that brought [C.S.'s] minor siblings into care." (count IV) At the shelter care hearing, the trial court appointed counsel for respondent and admonished her on the State's petition. After a discussion with her attorney, respondent waived her right to a hearing. The court accepted respondent's admission, found there was probable cause for the petition, and granted temporary custody and guardianship of C.S. to DCFS.

¶ 9        At the adjudicatory hearing on June 14, 2023, respondent stipulated to count I in the State's petition and waived her right to a hearing. Respondent further stipulated she was unfit or unable but not unwilling to care for C.S. and guardianship and custody should be granted to DCFS. The trial court accepted respondent's stipulation, found C.S. was a neglected minor, as alleged in count I of the petition, and found respondent was unfit or unable, but not unwilling to care for C.S. Custody and guardianship of C.S. were granted to DCFS.

¶ 10        In June 2024, the State filed petitions to terminate respondent's parental rights to B.L. and C.S. The State filed separate petitions with respect to each child, however, both petitions contained the same allegations:

"COUNT 1:

[Respondent] has failed to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare. 750 ILCS 50/1(D)(b).

COUNT 2:

[Respondent] has failed to make reasonable efforts to correct the conditions that caused the child to be removed during a nine (9) month period after an adjudication of neglected or abused minor under Section 2-3 of the [Juvenile Court Act] or dependent minor under Section 2-4 of that Act. 750 ILCS 50/1(D)(m)(ii) 06/23/2023 to 03/23/2024 and/or 09/10/2023 to 06/10/2024[.]

COUNT 3:

[Respondent] has failed to make reasonable progress toward the return of the child to her during a nine (9) months [*sic*] period after an adjudication of neglected or abused minor under Section 2-3 of the [Juvenile Court Act] or dependent minor under Section 2-4 of that Act. 750 ILCS 50/1(D)(m)(ii) 06/23/2023 to 03/23/2024 and/or 09/10/2023 to 06/10/2024."

The trial court set the cases for a hearing on the State's petitions. The fitness portion of the hearing occurred on August 19, 2024, and the best interest portion occurred on September 17, 2024.

¶ 11                                    A. Fitness Hearing

¶ 12            Prior to calling its first witness, the State requested the trial court take judicial notice of the following: the neglect petition for B.L. filed on September 10, 2020; the temporary custody order for B.L. entered on September 11, 2020; the adjudicatory and dispositional orders for B.L. entered on April 23, 2021; the neglect petition for C.S. filed on March 15, 2023; the temporary custody order for C.S. entered on March 16, 2023; the adjudicatory and dispositional orders for C.S. entered on June 14, 2023; permanency review orders entered on November 21, 2021, July 25, 2022, January 9, 2023, March 15, 2023, June 29, 2023, January 8, 2024, and June 10, 2024; and the petitions for termination of parental rights for each minor filed on July 17, 2024. The State then offered four DCFS indicated reports, the integrated assessment completed in November 2020,

- 4 -

and 13 service plans into evidence. The court admitted these exhibits pursuant to an agreement by the parties. Following the admission of the exhibits, the State presented testimony from Mercedes Sanchez.

¶ 13                                      1. *Testimony of Mercedes Sanchez*

¶ 14                                      a. Direct Examination

¶ 15          Mercedes Sanchez, a caseworker for Brightpoint, was the caseworker assigned to respondent's case in February 2024. However, Sanchez noted the case was assigned to Brightpoint in September 2020, when B.L. came into care. B.L. came into care after respondent's oldest child, C.S.L., was found wandering the streets while respondent was home asleep. The agency initially opened an intact case with respondent; however, respondent failed to cooperate with the intact case. After B.L. and C.S. came into care, respondent was informed of the importance of completing services in order to have her children returned to her care.

¶ 16          Respondent was assigned services for substance abuse, mental health, and individual therapy. According to Sanchez, respondent did not complete a substance abuse assessment until February 2024. After completing the substance abuse assessment, respondent began group counseling at Rosecrance. However, her attendance was inconsistent, and she was unsuccessfully discharged due to poor attendance at the end of March 2024. Rosecrance then recommended respondent enter inpatient substance abuse treatment. Despite this recommendation, respondent failed to enter inpatient treatment or re-engage in outpatient treatment. Throughout the pendency of the cases, respondent missed several drug "drops" and tested positive for methamphetamine on multiple occasions.

¶ 17          The agency informed respondent at the outset of B.L.'s case that she needed to complete a mental health assessment. This assessment was required because when respondent met

with a Brightpoint counselor, she "presented with some paranoia [*sic*] behaviors and \*\*\* was also very unorganized and scattered." Respondent did not complete the required mental health assessment until September 2022. Although the assessment did not recommend any services, the agency referred respondent for individual counseling. Respondent attended individual counseling from May 2021 to September 2021, at which point she was unsuccessfully discharged. Respondent never re-engaged in individual counseling after being unsuccessfully discharged in September 2021.

¶ 18 Respondent received supervised visitation two to three times per week at the foster parents' home. Throughout the pendency of the cases, respondent visited with B.L. and C.S. regularly. However, in May 2024, respondent's visits with the children became sporadic. Respondent attended some doctor's appointments for C.S. but none for B.L. Sanchez referred respondent for parenting coaching in March 2021, but respondent was unsuccessfully discharged due to nonattendance in September 2021.

¶ 19 According to Sanchez, respondent did not complete any services recommended to her by the agency. Respondent also never took accountability for her actions resulting in the children being placed in foster care. Sanchez stated she still had concerns about respondent's ability to safely parent C.S. and B.L.

¶ 20                                     b. Cross-Examination

¶ 21 On cross-examination by the guardian *ad litem*, Sanchez stated respondent missed more drug drops than she completed during the pendency of the cases. The agency considered any missed drop to be a positive drop.

¶ 22 On cross-examination by respondent's counsel, Sanchez acknowledged visits between respondent and the children were appropriate and respondent had "basic parenting skills."

- 6 -

Sanchez was unaware of any instances where respondent appeared to be under the influence at visits with the minors. Additionally, respondent completed a parenting class geared toward parents of children with autism and a mental health assessment in June 2023, which did not recommend further mental health services.

¶ 23                                    2. *Trial Court's Ruling*

¶ 24        Following arguments from the parties, the trial court took the matter under advisement. On September 17, 2024, the court issued its oral ruling with respect to respondent's unfitness. The court found the State had proven counts I through III in its petition by clear and convincing evidence. In its ruling, the court noted respondent's failure to complete any services and respondent's continued struggles with methamphetamine addiction. The court concluded by stating, "I do believe that [respondent] loves and cares about her children; however, she has demonstrated an unwillingness or inability to address these issues to create a safe environment for her children despite appropriate services being offered."

¶ 25                                  B. Best Interest Hearing

¶ 26        After providing its oral ruling as to parental fitness, the trial court immediately proceeded to a best interest hearing. The State asked the court to take judicial notice of all the evidence presented at the fitness hearing and the caseworker's report filed on September 9, 2024. Following that request, the State presented testimony from Sanchez.

¶ 27                              1. *Testimony of Mercedes Sanchez*

¶ 28        According to Sanchez, C.S. and B.L. were placed with their maternal aunt and uncle in March 2024. The foster parents included the children in their family activities, and C.S. had shown a "bond and attachment" with them. Sanchez spoke with B.L., and although he loved and cared for respondent, he understood "that it is safer for him to be with [his foster parents]." B.L.

expressed a desire to remain in the care of his foster parents. The foster parents had expressed a willingness to adopt the children. Additionally, the foster parents indicated, "as long as there's no substance abuse concerns," they were willing to maintain a relationship between respondent and the children. In Sanchez's opinion, it was in the children's best interest for respondent's parental rights to be terminated.

¶ 29                                    2. *Testimony of Respondent*

¶ 30        Respondent informed the trial court she "would like to be able to get another chance to keep [her] kids[ and] go to rehab." She planned to enter inpatient treatment that month and "stay as long as [she] [had] to." The children were bonded to her, and she helped the foster parents as much as she could with the children during her supervised visits.

¶ 31                                    3. *Trial Court's Ruling*

¶ 32        Following arguments from the parties, the trial court found it was in the children's best interest for respondent's parental rights to be terminated. The court emphasized the children's need for stability and their strong connection with the foster parents. In addition, the court stated:

> "It's evident to me that the current caregivers will continue a relationship between the boys and [respondent] in a very safe and healthy environment that has structure and stability built into it and boundaries which are necessary so that they can grow up with a better sense of positive healthy relationships."

Accordingly, the court terminated respondent's parental rights.

¶ 33        This appeal followed.

¶ 34                                    II. ANALYSIS

¶ 35        On appeal, respondent's counsel moves to withdraw, contending "there are no viable non-frivolous issues to present in this appeal." In support of his motion to withdraw, counsel

submitted a memorandum of law providing a statement of facts and argument as to why respondent's claims lack merit. Counsel provided proof of service of his motion and memorandum on respondent, and this court granted respondent the opportunity to file a response. Respondent failed to file a response. After examining the record and counsel's motion to withdraw, we find respondent's appeal presents no potentially meritorious issues for review and, accordingly, we grant counsel's motion to withdraw and affirm the trial court's judgment.

¶ 36                    A. Trial Court's Finding of Parental Unfitness

¶ 37            Under the Juvenile Court Act, there is a two-stage process for the involuntary termination of parental rights. The first stage, commonly referred to as a fitness hearing, "focus[es] *** on the parent's conduct relative to the ground or grounds of unfitness alleged by the State." *In re D.T.*, 212 Ill. 2d 347, 364 (2004). The burden is on the State to "demonstrate by clear and convincing evidence that the parent is 'unfit' under one or more of the grounds set forth in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2004))." *In re Veronica J.*, 371 Ill. App. 3d 822, 828 (2007). On review, this court affords great deference to the trial court's finding of parental unfitness and will not disturb that finding unless it is against the manifest weight of the evidence. *In re H.D.*, 343 Ill. App. 3d 483, 493 (2003). "A decision is against the manifest weight of the evidence when the opposite conclusion is clearly apparent." *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 48.

¶ 38            In this case, the trial court found respondent unfit on multiple grounds; however, it is well-settled "[a] trial court's judgment may be affirmed if the evidence supports the finding of unfitness on any one of the alleged statutory grounds." (Internal quotation marks omitted.) *In re M.C.*, 2018 IL App (4th) 180144, ¶ 32. A review of the evidence presented at the fitness hearing establishes the State met its burden of proving respondent was an unfit parent by clear and

convincing evidence. Sanchez testified respondent did not complete any recommended services, despite multiple referrals for services by the agency. Additionally, respondent continued to miss drug drops and test positive throughout the pendency of the proceedings. This evidence was sufficient to prove count III of the State's petition: respondent failed to make reasonable progress toward the return of her children during either of the alleged nine-month periods. Consequently, the court's determination respondent was an unfit parent was not against the manifest weight of the evidence.

¶ 39                               B. Trial Court's Best Interest Finding

¶ 40          Following a trial court's determination a parent is unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *D.T.*, 212 Ill. 2d at 352. At this second stage, commonly referred to as the best interest hearing, "the State bears the burden of proving by a preponderance of the evidence that termination of parental rights is in the child's best interest." *In re J.B.*, 2019 IL App (4th) 190537, ¶ 31. When determining if the State has met its burden, the court should consider the following statutory factors:

> " '(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity of affection, and the least[-]disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child.' " *In re Dal. D.*, 2017 IL App (4th) 160893, ¶ 52 (quoting *In re*

*Daphnie E.*, 368 Ill. App. 3d 1052, 1072 (2006)).

¶ 41    As with a review of a court's finding of unfitness, "[a] reviewing court [also] affords great deference to a trial court's best-interest finding because the trial court is in a superior position to view the witnesses and judge their credibility." *J.B.*, 2019 IL App (4th) 190537, ¶ 33. "A trial court's finding that termination of parental rights is in a child's best interests will not be reversed on appeal unless it is against the manifest weight of the evidence." *M.C.*, 2018 IL App (4th) 180144, ¶ 35. "A decision is against the manifest weight of the evidence when the opposite conclusion is clearly apparent." *Ta. T.*, 2021 IL App (4th) 200658, ¶ 48.

¶ 42    Although respondent expressed love for her children and a desire for more time to comply with services, the trial court's decision it was in the children's best interest to terminate respondent's parental rights was not against the manifest weight of the evidence. The evidence presented at both the unfitness and best interest hearings demonstrated B.L. had been in foster care for four years and C.S. had been in foster care his entire life. The children were bonded with their foster parents, and the foster parents provided the children with a safe, stable home environment. Moreover, the foster parents indicated they would continue to allow the children to maintain a relationship with respondent if respondent was sober. The court emphasized the children's need for stability and the fact respondent was not in any position to have the children returned to her within the foreseeable future. Based on this evidence, the court's finding it was in the children's best interest for respondent's parental rights to be terminated was not against the manifest weight of the evidence.

¶ 43                              III. CONCLUSION

¶ 44    For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 45          Affirmed.